LEBANON MINING COMPANY OF NEW YORK v. ROGERS.

1. At common law the regularity of the ministerial acts preceding a tax deed, and upon which it rests, is not presumed; in the absence of statutory provision it is not admissible in evidence without proof that all the requirements of the law have been complied with by the agents of the government.

    By a statute of this state a tax deed is made *prima facie* evidence of these prerequisites, and that the property was subject to taxation.

    A tax deed can only be assailed by one who has title, claim or color of title.

2. It is the better doctrine that both color and claim of title may exist without any instrument, provided such claim or color be in good faith; in the absence of writings there must be some visible act, sign or indication showing the extent of the boundaries of the land claimed.

3. When the statutory period for redemption has expired, the tax title absorbs the whole estate, including the fee of the patentee; the tax deed, however, remains subject to impeachment by proper parties

for irregularity in the proceedings on which it rests during the statutory period of five years from the date of sale.

4. It is incumbent upon the party relying upon his possession under the statute of limitations as against the owner of the tax title to establish not only a claim and color of title, but also the *bona fides* thereof.

*Appeal from District Court of Clear Creek County.*

THE facts are stated in the opinion.

Messrs. JOHN A. COULTER and R. S. MORRISON, for appellant.

Mr. E. O. WOLCOTT, for appellee.

HELM, J. Appellant was the undisputed owner of the Ben Harding, a patented mining claim; appellee asserted ownership, through a tax title, of the Caledonia, another patented claim contiguous to the former. The vein of the Ben Harding departed on its strike from the side line thereof into the Caledonia territory, ultimately, however, returning within the Ben Harding boundary lines. Appellant was, at the time of the tax sale, and for a period prior thereto had been, peaceably occupying and working that portion of the lode within the Caledonia surface ground. Upon receiving his tax deed, appellee brought ejectment for this part of said vein and recovered a judgment, to reverse which the appeal now before us is taken.

At the trial, appellee, being plaintiff, offered the patent to the Caledonia claim or lode, also his tax deed, which were received in evidence over defendant's objections. But the Ben Harding patent tendered by defendant was rejected, as was its deed from the patentee, and all evidence proposed with a view of impeaching the tax title. We are bound to presume, for the purposes of this appeal, that defendant would, if permitted, have shown that the tax deed of plaintiff was void.

Two important questions are presented for determina-

tion. The first rests upon alleged error in denying defendant the privilege of attacking plaintiff's tax title.

No briefs are filed on the part of appellee, but we are safe in concluding that the court's ruling was not based upon the form of action.

It will be borne in mind that in this case we are dealing entirely with patented property; this is not a contest over the mere possessory license or interest acquired through compliance with mining location statutes, or actual occupancy and development.

A tax title differs in some respects from that obtained through patent by ordinary conveyance. The deed, when offered as evidence, is not governed by the same rules. At common law the regularity of the ministerial acts preceding the tax deed, and upon which it rests, is not presumed; in the absence of statute a tax deed is not admissible in evidence except it be accompanied by proof "that all the requirements of the law have been complied with by the agents of the government." Blackwell on Tax Titles (4th ed.), 80. But by statute in this state the tax deed is made *prima facie* evidence of the regularity of these prerequisites; also that the property described therein was subject to taxation. The burden of proof concerning these things is simply shifted to the attacking party. General Statutes, sec. 2932.

Appellee's tax deed was therefore not conclusive; if void, upon the grounds alleged, it was clearly subject to impeachment in the action of ejectment. But such deed must be assailed by some one who is not a mere intruder or trespasser without right or title, or claim or color of title.

It therefore becomes material to determine the attitude of appellant towards the property in controversy. That appellant had no actual title to the part of the vein upon the Caledonia ground may be affirmed without argument. Its possession as against the real owner of the lode amounts to nothing unless accompanied by claim or

color of title; without such accompaniment or aid appellant was a mere intruder.    Did it reinforce its possession with a legal " claim or color of title ? "

In *Wright v. Mattison*, 18 How. (U. S.), 56, it is said that " the courts have concurred, it is believed, without an exception, in defining color of title to be that which has the appearance of title, but which in reality is no title.    They have equally concurred in attaching no exclusive or peculiar character or importance to the ground of invalidity of an apparent or colorable title; the inquiry with them has been whether there was an apparent or colorable title under which an entry or a claim has been made in good faith."

In many cases a *writing* is assumed or held to be necessary as a foundation for color of title.    *Brooks v. Bruyan*, 35 Ill. 394; *Beverley v. Burke*, 9 Ga. 443; *Cook v. Norton*, 43 Ill. 391; Abbott's Law Dictionary, " Color of Title."

But it is thought now to be the " better doctrine " that both color and " claim of title " may exist without any instrument, provided that such claim or color be in good faith.    *McCall v. Neely*, 3 Watts, 69.    Yet it is said that if there be no writing purporting to convey, " there must be some visible acts, signs or indications which are apparent to all, showing the extent of the boundaries of the land claimed, to amount to color of title."    *Cooper v. Ord*, 60 Mo. 431.    For a more complete citation of authorities upon the foregoing subject, see 14 Am. Decs., note on page 580 *et seq.*

Whether or not a deed is necessary is, however, a matter about which we need spend no time in argument, for in this case, as to claim or color of title, reliance is had entirely upon instruments of writing.

Counsel assert that " any equity based on a paper for a foundation makes claim and color of title."    This test is not strictly in accordance with the definition above adopted, but let us apply it to the case here made by ap-.

pellant.   The *paper* upon which counsel mainly rely is the Ben Harding patent.   But it may truthfully be said that this instrument does not *purport* to convey the part of the lode within the Caledonia territory, for the surface ground of the Ben Harding is therein described by metes and bounds, and the boundaries of this surface ground indicate the limit of the grant as to the lode except it depart from the side line on its *dip*.   The "paper for a foundation" must refer or be supposed to refer to the disputed territory.   It would be absurd to say that a deed specifically and plainly describing the northwest quarter of a given section, and so understood by the grantee, could constitute the *foundation* of a claim or color of title to the southeast quarter thereof.

But further discussion of the foregoing question is rendered unnecessary by a decision of this court.   In *Wolfley v. Lebanon Mining Company*, 4 Colo. 112, this identical patent was under consideration.   Appellant here was appellee in that case.   Thatcher, C. J., after arguing at length this feature of the side line question, declares that the patentee cannot "follow it (the lode) when in its outward course or strike it departs from the vertical side lines," and he concludes as follows:   "If, then, as the evidence tends to shows, the ledge on the Ben Harding lode was deflected on its onward course or strike from the patented side lines, the patentee is not entitled to its possession beyond his lateral boundaries, as against one who has subsequently located and patented it."   By the foregoing decision appellant was informed upwards of a year prior to the commencement of this suit of the fact that the Ben Harding patent gave no right whatever to occupy or mine the Ben Harding vein after its linear deflection into the territory of another patented claim, as against the patentee of the latter.   In view of this adjudication how can it be truthfully asserted that the Ben Harding patent could have been considered by appellant or its agents as a *paper foundation* upon which to pred-

icate a claim or color of title to the premises in dispute as against the patentee thereof; as well might it be said that when the court of last resort has solemnly declared that a deed conveys no title or right whatever to lot B, yet the grantee therein named may afterwards use the same as a basis for his claim or color of title to said lot.

Counsel quote with approval the following from *Wright v. Mattison, supra*, as being color of title: "that which in appearance is title, but which in reality is no title." But the paper which they rely upon in the case at bar as *giving appearance of title* had previously been adjudged to be no title, in an action to which their client was a party. If by any stretch of the imagination it might have been claimed that this paper had that appearance prior to the adjudication mentioned, surely it was divested thereby of the same, so far at least as appellant is concerned.

Appellant's position is not aided by the fact that it holds by deed from the original Ben Harding patentee. Its title was the same at the trial of the Wolfley suit, and by the reversal of that judgment it was apprised that the deed was no more efficacious in regard to the deflected vein than the patent.

By that decision, then, appellant was informed that it was not entitled by virtue of either patent or deed to possession of the premises in dispute as against the Caledonia patentee. And we think this is equally true as to the owner of the tax title; the statutory period for redemption had expired, and the tax title had drawn to itself and absorbed the whole estate, including the fee of the patentee. The tax deed would, of course, remain for the statutory period of five years from the date of sale, subject to impeachment for irregularity in the proceedings upon which it rests, by the patentee or parties claiming ownership or interest under or through the patent.

So far as appellant is concerned, however, it is in no different or better position, in this respect, than it would

be if the patentee and not the owner of the tax title were a party.

Appellant's interest in the segment of the lode in controversy is not based upon claim or color of title; the right thereto rests upon naked possession. As to both the patent and tax titles, it is a mere intruder. The fact that the patentees offered no objection to appellant's trespass, created no equity whereby appellee was estopped or prejudiced in asserting the same. Under the circumstances shown by the record before us, appellant was not in a position to attack the tax title. There was, therefore, no error in rejecting the evidence offered for the purpose of so doing.

We now come to the second question presented in this case, viz.: appellant's affirmative defense, the statute of limitations. Under the act referred to (see General Statutes, sec. 2186 *et seq.*), the possession must have been for five years with "claim and color of title in good faith."

It is extremely doubtful, particularly in view of section 2189 being section 4 thereof, if this act was intended to apply in cases where the disputed territory is patented ground; but we are not obliged to pass upon that question. The possession is averred in the answer to have continued for about five and a half years prior to this suit. In view of what has already been said, it appears that such possession could not have been for five years under claim of title in good faith, for the Wolfley case was decided some time previous to the expiration of that period. Moreover, the matter of good faith is expressly made material by the statute. It was appellant's duty to prove not only its claim and color of title, but also the *bona fides* thereof; this it made no effort or offer to show. We do not think the court erred upon this branch of the case.

Two other assignments of error are mentioned by counsel in their brief; but they are hardly of sufficient importance to warrant lengthy consideration in this opin-

ion.   We are satisfied that counsel's positions regarding them are not well taken, and that there was no substantial error in the trial.   The judgment is affirmed.

*Affirmed*