<hr />

MORRIS AND THOMBS v. ST. LOUIS NATIONAL BANK.

1. TAX SALE—NOTICE OF.—Among other prerequisites to a valid sale of land for taxes is the giving of notice thereof; and when it is shown that such notice has not been given in substantial conformity with the statute, the sale will be adjudged invalid notwithstanding a tax deed in proper form may have been duly executed and recorded.

2. TAX SALE—PROOF OF NOTICE.—The statutory form of affidavit for proving the publication of notice of a tax sale need not be literally followed; but if the substantial requisites of such affidavit be disregarded, the proof of notice cannot be held sufficient.

3. LIMITATIONS—REVENUE ACT 1877, SEC. 96.—The limitation upon the right of action for the " recovery of land sold for taxes," pre-

| | |
|---|---|
| 17 | 231 |
| 3a | 255 |
| 17 | 231 |
| 20 | 309 |
| 20 | 312 |
| 20 | 392 |
| 17 | 231 |
| 7a | 303 |
| 7a | 307 |
| 17 | 231 |
| 23 | 273 |
| 23 | 355 |
| 23 | 358 |
| 17 | 231 |
| 24 | 274 |
| 17 | 231 |
| 10a | 185 |
| 17 | 231 |
| 33 | 387 |
| 33 | 447 |
| 17 | 231 |
| h34 | 275 |
| 20a | 437 |
| 17 | 231 |
| e35 | 121 |
| 3J | 353 |
| 37 | 183 |

scribed by section 96 of the revenue act of 1877, does not apply to
an action to *remove cloud from title* brought by the original owner
against a party claiming under a tax deed, where the tax claimant has
never taken actual and adverse possession of the land.  Same hold-
ing as to act of 1885, changing said section 96.

4. SAME—SEC. 2924, MILLS' STATUTES.—Section 2924, Mills' Stats., un-
der the circumstances specified therein, operates as 'a limitation
upon actions involving conflicting titles to vacant and unoccupied
lands; but where the defendant pleads such statute and the plaint-
iff proves a better paper title, and also the payment of taxes upon
the land for the same period  claimed by defendants, the plea will
be unavailing.

5. SAME—SEC. 2912, MILLS' STATUTES.—In an action to remove cloud
from title occasioned by the recording of a tax deed to vacant and
unoccupied land, the cause of action does not accrue to the original
owner of the land until the deed is recorded.

Whether without taking possession by the tax claimant and without
actual notice of the deed to the original owner, the mere recording
of the deed is sufficient to set the statute in motion in favor of the
tax claimant as to vacant land, not decided.

*Appeal from District Court of Pueblo County.*

ACTION relating to tax sale.   The finding and judgment
were in favor of the St. Louis National Bank, plaintiff be-
low.   The defendants Morris and Thombs bring this appeal.

Messrs. WELLS, MCNEAL & TAYLOR, for appellants.

Mr. J. M. WALDRON AND Mr. JOHN W. SLEEPER, for
appellee.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

The record in this case shows a proceeding in the nature
of a bill in equity to remove a cloud from the title to 72
certain lots or parcels of land situate in East Pueblo, Pueblo
county, Colorado.   The cloud consists of a deed, commonly
called a tax deed, executed by the treasurer of said county
to the defendant Morris.   The defendant Thombs claims
an interest in the lots by virtue of a contract with his co-
defendant.

1. There is some question whether the tax deed contains sufficient recitals to be *prima facie* evidence of title in favor of defendants under the statute. But such question need not be determined in this case, since by allegation and proof, *aliunde*, the plaintiff is entitled to show that the tax sale upon which the deed rests was invalid, and thus have the deed canceled, even if the same be in all respects regular and sufficient upon its face. Mills' Ann. Stats., sec. 3902; *Lebanon Mining Co. v. Rogers*, 8 Colo. 36.

Among other prerequisites to a valid sale of lands for taxes, the statute provides for the giving of notice of such sale, for the proof of such notice, and for the careful preservation of such proof. Mills' Ann. Stats., secs. 3882–3885.

When by proper averment and evidence it is affirmatively shown that proper notice of a sale has not been given, or that the proof of such notice has not been made in substantial conformity with the statute, the sale will be adjudged invalid, notwithstanding a tax deed, in proper form, may have been duly executed and recorded.

Notice of a tax sale is required to be given by publication in a newspaper and otherwise (sec. 3883, *supra*); and the publication is required to be proved by affidavit. The statute provides that such affidavit may be substantially in the following form:

"I, A. —— B. —— publisher (or printer) of the ——, a —— newspaper, printed and published in the county of ——, and state of Colorado, do hereby certify that the foregoing notice and list were published in said newspaper, once in each week, for —— successive weeks, the last of which publication was made prior to the —— day of —— A. D. ——, *and that copies of each number of said paper, in which said notice and list were published, were delivered by carriers or transmitted by mail to each of the subscribers of said paper, according to the accustomed mode of business in this office.*" Sec. 3884, *supra*.

The affidavit introduced as proof of notice of the sale in this case was as follows:

"We, * * * publishers of the Pueblo Democrat (weekly) newspaper printed and published at Pueblo, in the state of Colorado, do hereby certify that the foregoing notice and list were published in said newspaper once in each week for four consecutive weeks, the last of which publication was made prior to the first day of September, 1879, and *that extras of said paper entitled ' Supplement to the Weekly Democrat' were duly circulated with each edition of said paper, according to the accustomed mode of business in the office."*

This affidavit was produced from the custody of the county clerk with whom we must presume it was deposited to be carefully preserved as the statute requires. Sec. 3885, *supra.* The clerk testified that no other affidavit was on file, and that no other could be found relating to the notice of said sale. *Hall v. Kellogg,* 16 Mich. 189.

It will be observed that the affidavit does not show, either in form or substance, that any copy or copies of such paper containing such notice and list were delivered to any subscriber of said paper, much less, that any of said papers were delivered by carriers or transmitted by mail to each of the subscribers of said paper. In fact the affidavit does not indicate even by inference that there were any subscribers to said paper. The affidavit shows that extras of said paper were *duly circulated.* But what is meant by "duly circulated," does not appear. The affidavit shows that the circulation was according to the accustomed mode of business in that office. But what such accustomed mode of business was, is not shown. The affidavit does not even show *that the papers were duly distributed according to law,* as is the case of *Fisher v. The People,* 84 Ill. 495, cited by counsel for appellants.

The statute contemplates that the notice shall be published in a newspaper having regular subscribers, and that copies of each number of the paper containing the notice and list shall be delivered to the several subscribers of said paper by carrier or by mail; and that the affidavit of the publisher or printer shall substantially state such facts. The mere opin-

ion or conclusion of the affiant cannot be allowed as a sub-
stitute for such facts.   The statutory form of affidavit need
not be literally followed; but there can be no excuse for dis-
regarding its substantial requisites; neither does the fact
that the word *may* was used, instead of must or shall, in pre-
scribing the form of such affidavit, warrant a material de-
parture from the statutory form.   The affidavit in this case
cannot be held sufficient as proof of notice of the sale under
consideration.   Cooley on Taxation, 334 *et seq.; Wade on
Notice*, sec. 1106 *et seq. ; Gomer v. Chaffee*, 6 Colo. 314;
*Lagroue v. Rains*, 48 Mo. 536; *County Commissioners v.
Clarke*, 36 Md. 220.

2. The tax sale at which the lands in controversy were
bid off was held in October, 1879.   The tax deed, though
dated November, 1882, was not recorded until January, 1884.
This action was commenced in February, 1888.

In the court below the defendants pleaded separate and
distinct defenses evidently designed to invoke the benefit of
whatever statute of limitations might be deemed applicable
to the case.

Section 96 of the revenue act of 1877, Gen. Laws, p. 778,
is much relied on by counsel for defendants.   The limitation
reads as follows : " No action for the recovery of land sold
for taxes shall lie, unless the same be brought within five
years after the sale thereof for taxes as aforesaid, any law
to the contrary notwithstanding."   But this section was
changed by the act of April 4, 1885, Mills' Stats., sec. 3904, so
that it now reads: " No action for the recovery of land sold
for taxes shall lie, unless the same be brought within five
years after the execution and delivery of the deed therefor
by the treasurer, any law to the contrary notwithstanding."

If the defendants had made an entry into and upon the
lands in controversy, taking actual possession of them by
open and visible acts, and the plaintiff had brought an ac-
tion in the nature of ejectment to recover possession, there
could be no doubt of the applicability of one or both of the
acts above quoted.   The only question then would be as to

their proper construction. But defendants' answer expressly admits that the premises in controversy "have remained wholly vacant, unoccupied and unimproved" at all times since the date of the tax deed, November 3, 1882. Under such circumstances it is difficult to conceive how the present action can be regarded as an action for the *recovery* of said lands since the plaintiff has never been actually dispossessed of them.

It is only by resorting to a fiction of law that defendants can find authority for pleading either of the foregoing acts of limitation. The theory may be stated thus: In the case of vacant and unoccupied lands the legal title draws to it the possession. The tax deed as executed and recorded vests the legal title *prima facie* in defendants. Therefore, defendants have possession of the land in controversy. Upon this basis, it is argued, that as the present action is brought to cancel defendants' tax deed and thereby re-establish plaintiff's legal title, it will, if successful, result in reuniting both title and possession in the plaintiff, and, therefore, that it is an action for the recovery of land by the plaintiff from the defendants. This results from the fiction, that the possession of vacant or unoccupied lands follows the legal title.

If we accept the fiction, it must be because justice and equity will be thereby subserved. *In fictione juris semper subsistit æquitas.* In Cooley on Taxation, 381, the learned author speaking upon this subject says: "Possession of a vacant tenement is and must be purely a matter of fiction. Constructive possession is recognized for some purposes, because, under our peculiar forms of action, it is found necessary in order to the protection of the rights of the owner against trespassers. The fiction is accepted, as all fictions in the law are, for the sake of justice; never to do injustice. But if one's freehold has been illegally sold under adverse proceedings, there is no justice in resorting to a fiction of law in order to sustain the sale."

In Broom's Legal Maxims, p. 130, Lord Mansfield is quoted as saying that, "Fictions of law hold only in respect of the

ends and purposes for which they were invented. When they are urged to an intent and purpose not within the reason and policy of the fiction, the other party may show the truth."

In determining whether the fiction as above stated should or should not be accepted as the basis for a plea of the statute of limitations in an action of this kind, it is proper to consider how differently the parties to such an action are related to the tax sale, and how differently they may be affected by it. The purchaser as a matter of fact knows of the sale at the outset—knows that he is taking steps to acquire a title which may invalidate the title of the original owner. As he does not undertake to buy from the owner, he is bound as a matter of law to take notice, at his peril, whether the official agents of the government have or have not authority to sell. By the liberal provisions of our revenue act, however, he takes little or no risk, since the purchase money must, in almost every instance, be returned to him with interest, if the sale proves to be invalid. On the other hand, the owner, in many cases, does not, as a matter of fact, know of the sale until long after it has taken place; the sale may be the result of inadvertence or excusable neglect on his part; and while upon being advised of the sale he may redeem his lands, or contest the sale, within the time allowed by the statute, the fact that the lands are vacant and unoccupied greatly diminishes the chances of his acquiring timely knowledge of the sale, and especially is this the case if the fiction of constructive possession be recognized in favor of the purchaser so that he has no inducement to take possession. Thus, while the purchaser incurs little or no risk with the chance of great gain, the owner is subjected to great risk with no chance of securing anything but his own; for if he does not learn of the sale in time to save his lands, a very large estate may be irretrievably lost on account of the non-payment of a very small amount of taxes. These considerations forbid that the revenue act, which is most liberal in its terms in favor of the purchaser, should be extended by legal fiction or pre-

sumption to the prejudice of the original owner any farther than a reasonable construction requires.   Cooley on Taxation, 380 ;  Black on Tax Titles, 72.

Other provisions of the revenue act illustrate the injustice of accepting the fiction of constructive possession for the purposes now under consideration.

In the first place, the tax certificate does not convey title; nor can a tax deed be lawfully executed and delivered until three years after the land has been bid off by the purchaser; nor does the deed when signed, attested, acknowledged and delivered convey title ; it is only when the deed is executed and recorded as provided by the statute, that it vests in the purchaser, *prima facie*, the title of the former owner.   Mills' Stats. 3900–3904.

Again, real property sold for taxes may be redeemed *at any time* before the expiration of three years from the date of sale, and at any time before the execution of the deed to the purchaser.   During all of said time, the owner by paying the taxes and interest, as provided by the statute, may obtain a redemption certificate clearing his property from such encumbrances, and if the taxes be legal, that is his only remedy.   Mills' Stats., sec. 3905.   Now, suppose in a given case the purchaser should not ask for or receive his deed until more than five years after the property was struck off. Until the reception and recording of the deed he would have no title to support the theory of constructive possession. Will it be contended, that after the expiration of said five years, he could receive and make use of the deed as an absolute shield against every kind of action which the original owner might bring to test its validity ?   Can it be maintained, in fact and in law, that he would be thus protected before any cause of action had accrued to the original owner against him ?

To hold that either of the foregoing statutes will run in favor of a purchaser at a tax sale before he is entitled to a tax deed, while he neglects to procure such deed—while he carries the deed in his pocket without recording it, and,

hence, while he has no title to the land and before he has taken actual possession thereof, and until, perhaps, the full period of limitation has elapsed (as counsel would have the statute construed), and that he may thereafter record the deed as an indisputable muniment of title, certainly would not subserve the ends of justice and equity, nor comport with the principles of limitation statutes. "All statutes of limitation must proceed on the idea that the party has full opportunity afforded him to try his right in the courts." Cooley's Const. Lim. 366; Wood on Limitations, sec. 117; Angell on Limitations, sec. 22; *Eldridge v. Kuehl*, 27 Ia. 160; *Shalemiller v. McCarty*, 55 Pa. St. 186; *Jones v. Randle*, 68 Ala. 258.

Furthermore, while the statute provides that a tax deed properly executed and recorded, *prima facie*, conveys the title, it nowhere provides that such deed shall give the purchaser possession of the property conveyed. It certainly does not give him an actual adverse possession such as would compel the original owner to resort to an action in the nature of ejectment to recover possession of the premises. On the contrary, the original owner being in possession by virtue of a perfect legal title, such possession is to be deemed sufficient for purposes of remedy and to continue until interrupted by an *actual* entry and *adverse* possession taken by another. *Baldwin v. Merriam*, 16 Neb. 199; *Hole v. Rittenhouse*, 1 Casey (Pa.) 492; *Waln v. Shearman*, 8 Sergt. & Rawle, 357; Angell on Limitations, sec. 384; Wood on Limitations, sec. 258; 2 Waterman on Trespass, sec. 918; Black on Tax Titles, sec., 226–228; 2 Blackwell on Tax Titles, 895, 932–937.

It is true, that under the Code, section 266, an action in the nature of ejectment may be brought for the recovery of vacant and unoccupied premises against any one exercising acts of ownership over them. But such remedy is not exclusive; and such is not the nature of the present action. An action like the present to remove cloud from title is an appropriate remedy by the original owner of vacant lands

against a party claiming title under a tax deed. By instituting such action the owner is not bound to confess himself ousted of his original. possession, nor to assume as a matter of law that the tax claimant is in possession by virtue of his tax deed, when in fact the claimant is not in possession, and when the very purpose of the action is to have such deed adjudged invalid. See 3 Pomeroy's Eq. Juris., sections 1398, 1399, and particularly note 4, where the learned author says: " When the estate or interest to be protected is equitable, the jurisdiction should be exercised whether the plaintiff is in or out of possession, for under these circumstances legal remedies are not possible."

Our conclusion is that the present action is not to be treated as an action for the recovery of land, and so neither of the limitations above quoted is applicable as a defense. This conclusion is the more satisfactory for the reason that other limitation statutes, more appropriate to actions of this kind, will subserve all the purposes of repose contemplated by such legislation without working such manifest injustice.

3. Section 2924, Mills' Statutes, reads as follows:

" Whenever a person having color of title, either by preemption or otherwise, as aforesaid, made in good faith to vacant and unoccupied land or mining claims, shall pay all taxes legally assessed thereon, or for improvements situate thereon, for five successive years, he or she shall be deemed and adjudged to be the legal owner of said vacant and unoccupied lands or mining claims, to the extent and according to the purport of his or her proper title or pre-emption * * * *Provided, however*, that if any person having a better paper title or pre-emption to said vacant and unoccupied lands or mining claims, shall during the said term of five years pay the taxes assessed on said lands or mining claims, or improvements thereon, for any one or more years of the said term of five years, then, in that case, such taxpayer, his heirs and assigns, shall not be entitled to the benefit of this section."

This section, under the circumstances specified therein, is clearly designed to operate as a limitation upon actions in

volving conflicting titles to vacant and unoccupied lands. It was specially pleaded by defendants in this case, and issue was taken thereon. True, the defense was unavailing; but this was not because the statute was not applicable to the nature of the action, but because the facts developed at the trial did not sustain the averments of the plea. The plaintiff, as we have seen, proved that it had the better title, and, also, that it had paid taxes upon the land continuously for the same five years claimed by defendants.

4. Section 2912, Mills' Stats., is the general limitation statute applicable to equity cases not otherwise provided for. It reads:

"Bills of relief, in case of the existence of a trust not cognizable by the courts of common law, and in all other cases not herein provided for, shall be filed within five years after the cause thereof shall accrue, and not after."

Appellants claim the benefit of this section. The question, therefore, arises: When, under the circumstances of the present case, did the statute begin to run? The question is not difficult to answer. The action is equitable in its nature. It is a suit to remove a cloud from the title to certain lands which plaintiff claims to own. The cloud consists of the tax deed under which defendants claim title—a deed, apparently valid, but which, as we have seen, is not really valid, because executed in pursuance of a sale of which the proof of notice was insufficient. Defendants expressly admit that their title rests solely upon said tax deed. The plaintiff's title is perfect but for the cloud of such deed.

When did the tax deed become a cloud upon plaintiff's title? As we have seen, no title is conveyed by a tax deed, until it is recorded. Until recorded the deed is not *prima facie* evidence of title, nor of a duly advertised tax sale, nor of any other prerequisite to a valid conveyance under the revenue act. When defendants acquired a *prima facie* title to the land by putting the deed upon record, the plaintiff's title was clouded; then, for the first time, plaintiff's present cause of action accrued, and it might thereupon bring its ac-

tion to determine the validity of such deed: 3 Pomeroy's Eq. Juris., *supra*. Perhaps plaintiff might have brought an action to prevent the recording of the deed, if before such recording it had had actual notice of the existence of the deed; but there is no proof or presumption that it had such notice, The defendants certainly cannot insist that the deed was notice of an adverse title in themselves, apparently valid, so long as by withholding it from the record, they did not acquire even a *prima facie* title under it, nor make the same evidence of a valid sale. Whether without taking possession and without actual notice, the mere recording of the tax deed was sufficient to set the statute of limitations in motion, we need not determine, since the recording was less than five years before the commencement of this action. It follows that the action was not barred by any statute of limitations that has been suggested.

5. The judgment of the district court might be affirmed, but for the fact that the statute provides for certain relief to the losing party in all cases of this kind. Among other things, it is required that taxes paid by others on the land with interest thereon, shall be ascertained and paid by the successful party. This requirement was not observed by the trial court; nor does any adequate reason for its omission appear in the record.

The evidence shows that the whole seventy-two lots were sold for the delinquent taxes of 1876. These taxes were originally only $17.22; but at the time the lands were bid off they amounted together with interest and other charges to $53.37. The defendant Morris having become the assignee of the certificate issued to the county in pursuance of the statute, and having paid certain taxes upon the land thereafter, is entitled to have the amount of such expenditures ascertained and paid by plaintiff. It appears by the complaint that plaintiff tendered to defendants the sum of $250 on account of such expenditures. The amount so tendered and pleaded may properly be made the basis of defendants' recovery, unless by proper evidence it shall be shown that they are entitled to a

greater or to a less sum. The judgment of the district court is reversed, and the cause remanded for further proceedings. in accordance with this opinion.

*Reversed.*