Knight, Plaintiff in Error, v. Lawrence, Defendant in Error.

1. Demurrer Reaching Back.
When a demurrer is interposed, the sufficiency of any antecedent pleading to which the pleading demurred to relates may be called in question.
2. Limitation Act 1874.
The words "proper title" in section 1 of the Act of 1874 (Gen. Stats. § 2186) means a "paper title;" also, the phrase "color of title," as used in said section, refers to a paper writing purporting to convey title, or to some writing whereby title is sought to be acquired.
3. Presumption of Good Faith.
The law presumes that all men act in good faith until there is some evidence to the contrary.
4. Deeds of Married Women.
Under the statute of conveyances of 1868, a married woman could not convey her real estate except by substantial compliance with section 17 of that statute; but her deed, acknowledged and certified in accordance with said section, may be read in evidence without, in the first instance, additional proof of its execution.
5. Demurrer to Replication.
Though an additional replication has been adjudged insufficient upon demurrer, it is nevertheless error to render final judgment for defendant where there are other replications putting in issue material allegations of each of the affirmative defenses of an answer.

*Error to the District Court of Arapahoe County.*

ACTION for the recovery of real property and damages for its detention. Judgment for defendant. Plaintiff brings the cause to this court by writ of error.

SYNOPSIS OF THE PLEADINGS.

Complaint as in an ordinary action of ejectment, plaintiff

claiming title in fee to lots 5 and 6 in block 125, East Division of the city of Denver, Arapahoe county, Colorado.

## ANSWER.

1st Defense: Denies plaintiff's title, possession and right of possession.

2d Defense: Alleges title, possession and right of possession in defendant.

3d Defense: Alleges title in defendant derived from plaintiff and her husband through sundry mesne conveyances by virtue of the execution and delivery of a certain deed as follows:

" *This deed* made this 23d day of September in the year of our Lord one thousand eight hundred and seventy-two between Elizabeth J. Knight and Henry Knight of the county of Arapahoe and territory of Colorado of the first part, and Martin H. Marriott of the county of Arapahoe and territory of Colorado, of the second part.

" Witnesseth, that the said party of the first part for, and in consideration of the sum of four thousand dollars to the said party of the first part in hand paid by the said party of the second part, the receipt whereof is hereby confessed and acknowledged, have granted, bargained, sold and conveyed and by these presents do grant, bargain, sell, convey and confirm unto the said party of the second part, his heirs and assigns forever, all the following described lot or parcel of land situate, lying and being in the county of Arapahoe and territory of Colorado, to wit:

" Two town lots in Denver city, in said county and territory known and designated in the plat of said town as lots five and six in block number one hundred and twenty-five (125) lying and being on Champa street between L. & M. It being agreed and understood that J. G. Perino holds a deed of trust given by E. J. and H. Knight for the sum of twenty-five hundred dollars which is now assumed by the party of the second part and is to be paid by him which with

the sum of fifteen. hundred dollars cash constitute the consideration in full.

" Together with all and singular the hereditaments and appurtenances thereunto belonging or in any wise appertaining and the reversion and reversions remainder and remainders, rents, issues and profits thereof and all the estate, right, title, interest, claim and demand whatsoever of the said party of the first part either in law or equity of, in and to the above bargained premises with the hereditaments and appurtenances.

" To have and to hold the said premises above bargained and described with the appurtenances unto the said party of the second part, his heirs and assigns forever.   And the said Elizabeth J. Knight and Henry Knight, parties of the first part, for their heirs, executors and administrators do covenant, grant, bargain and agree to and with the said party of the first part, his heirs and assigns, that at the time of the ensealing and delivery of these presents, are well seized of the premises above conveyed as of good, sure, perfect, absolute and indefeasible estate of inheritance in law, in fee simple and has good right, full power and lawful authority to grant, bargain, sell and convey the same in manner and form aforesaid and that the same are free and clear from all former and other grants, bargains, sales, liens, taxes, assessments and encumbrances of whatever kind or nature soever, and the above bargained premises in the quiet and peaceable possession of the said party of the second part, his heirs and assigns against all and every person or persons lawfully claiming or to claim the whole or any part thereof the said party of the first part shall and will warrant and forever defend.

" In witness whereof, the said party of the first part have hereunto set their hands and seals the day and year first above written.          ELIZABETH J. KNIGHT.     [SEAL]
                         H. KNIGHT.              [SEAL] "

" TERRITORY OF COLORADO,  }
      County of Arapahoe.   } ss.

" I, John R. Elvans, a notary public in and for said county

in the Territory aforesaid do hereby certify that Henry J. Knight who is personally known to me to be the person whose name is subscribed to the foregoing deed appeared before me this day in person and acknowledged that he signed sealed and delivered the said instrument of writing as his free and voluntary act for the uses and purposes therein set forth. And the said Elizabeth J. Knight, wife of said Henry J. Knight, having been by me examined separate and apart and out of the hearing of her husband and the contents and meaning of said instrument of writing having been by me made known and fully explained to her, she acknowledged that she freely and voluntarily executed the same and relinquished her dower to the lands and tenements therein mentioned without compulsion of her husband and that she does not wish to retract the same.

"Given under my hand and notarial seal this 23d day of September A. D. 1872.

"JOHN R. ELVANS, Notary Public."

[NOTARIAL SEAL.]

4th Defence: Alleges, *inter alia*, the execution and delivery of the deed set forth in the third defence for a valuable consideration; that the deed was received and accepted by Marriott from plaintiff in good faith and gave color of title under which by plaintiff's consent the grantee went into immediate possession of the premises, believing at the time and always thereafter believing that the deed conveyed to and vested in him the title in fee simple thereto; that said Marriott, his heirs, and the defendant have for more than sixteen continuous and successive years thereafter and next preceding the commencement of this action been in the actual, peaceable and undisputed possession of the property described in the complaint under claim and color of title made in good faith, and during said time have paid all taxes legally assessed upon said property, to wit, from 1872 to 1888, inclusive; and that by reason of the premises and by force of the statute in such case made and provided, defendant must

be deemed and held to be seized in fee of said premises and entitled to have and retain the possession thereof.

5th Defence : Short plea of statute of limitations in affirmative form.

### REPLICATION.

By a general replication each of the affirmative defences of the answer, that is, the second, third, fourth and fifth defences respectively, are traversed. In addition to this, there are two special replications ; the first is in substance as follows :

For replication to defendant's third and fourth defences plaintiff says, that on the 23d day of September, A. D. 1872, she was a married woman, the wife of one Henry Knight, who was then in full life, and that on said day she was and ever since has been and now is the owner and seized in fee in her own right of the premises in the complaint .described, and that the said Henry Knight did not then have nor ever had, any right, title or interest in or to the said premises other than as the husband of the plaintiff, and that the said supposed deed in said defences set out is not her deed, all of which said Marriott, grantee in said deed, his heirs, and each of them, and the said defendant, at and after the time when it is alleged they acquired title and possession of the premises respectively, well knew.

The second special replication to said third and fourth defences is the same in substance as the first, except that it does not contain the allegation that the deed of September 23, 1872, is not the deed of the plaintiff.

Defendant demurred to said special replication for insufficiency ; that is, on the ground that neither of said replications state facts sufficient to constitute a reply to either the third or fourth defences of defendant's answer. Upon argument and consideration said demurrers were sustained; and thereafter plaintiff electing to abide by said special replications, and declining to plead further, the court rendered final judgment dismissing plaintiff's action.

LIMITATION ACT OF 1874.

Sec. 1. "That every person in the peaceable and undisputed possession of lands or tenements, including mining claims, under claim and color of title, made in good faith, including pre-emptions made in accordance with the laws of the state of Colorado, or any mining district wherein such property may be situate, who shall for five successive years hereafter continue in such possession, and shall also, during said time, pay all taxes legally assessed on such lands, tenements or mining claims, shall be held and adjudged to be the legal owners of said lands, tenements or mining claims, to the extent and according to the purport of his or her proper title or pre-emption. All persons holding under such possession by purchase, devise or descent, before said five years shall have expired, and who shall continue such possession and continue to pay the taxes aforesaid, so as to complete the possession of and payment of taxes for the term aforesaid, shall be entitled to the benefit of this section." Gen. Stats. § 2186.

CONVEYANCES BY MARRIED WOMEN.

"Sec. 17. Married women may convey their estate in lands by uniting with their husbands in any conveyance thereof, and acknowledging the same separate and apart from their husbands; and the officer hearing such acknowledgment shall certify that the same was made upon examination separate and apart from, and out of the presence of the husband of such woman, that the contents, meaning and effect of such deed were by him fully explained to her. The provisions of section fifteen of this chapter shall not apply to conveyances by married women." Rev. Stats. § 1868, p. 111.

Mr. S. L. CARPENTER, for plaintiff in error.

Messrs. BARTELS & BLOOD, for defendant in error.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

The assignments of error challenge, *first*, the interlocutory

judgment sustaining the demurrers to the special replications, and *second*, the final judgment dismissing plaintiff's action.

1. When a demurrer is interposed the sufficiency in substance of any antecedent pleading to which the pleading demurred to relates, may be called in question, as well as the sufficiency of the pleading directly challenged. Under this rule, counsel for plaintiff asks that the demurrer to the special replications be carried back to the third and fourth defences.

2. At the threshold of this controversy it is boldly asserted that a certain statute published by authority, and accepted as valid law by the courts for the last twenty years, is null and void. The act thus challenged is familiarly known as the statute of limitations, based upon *possession and payment of taxes under claim and color of title made in good faith.* Session Laws 1874, p. 177 ; General Laws (1877), § 1694 ; Gen. Statutes (1883), § 2186 ; Mills' An. Stats. (1891), § 2923.

The statute in question was undoubtedly borrowed from Illinois. The Illinois act, however, prescribes seven years as the period of limitation, instead of five, and contains the words, " paper title," where our statute as published contains the words, " proper title."

The engrossed bill on file in the office of the secretary of state, showing the introduction and passage of the bill through the territorial legislature, contains the words, " paper title," the same as the Illinois statute ; but the enrolled bill approved by the governor reads, " proper title." From this it is contended that the bill never became a law, not having been approved in the form in which it was passed. We think a different conclusion is to be drawn from the condition of the bill as well as from its subject-matter ; the discrepancy appears to have been a clerical mistake, such as should not be held fatal to the existence of the statute. Considering the whole section and its manifest purpose, the words *proper* title in the published laws should be construed as meaning a *paper* title ; otherwise, the statute would be of

little value.  If a person has a *proper title*, he would have little need of a statute allowing him to plead possession and payment of taxes for five years under claim and *color of title* made in good faith.  Color of title means that which appears to be title, but which really is not title.  The words *proper title* in the latter part of the section are inconsistent with the words *color of title* in the former part.  In our opinion, the phrase " color of title," as used in section 1 of the Act of 1874 (Gen. Stats., § 2186), refers to a paper writing purporting to convey title, or to some writing whereby title is sought to be acquired.  This construction gives consistency to the different words and phrases of the section, and effectuates the evident intent and purposes of the act.  *Simmons v. Powder Works*, 7 Colo. 285 ; *Murray v. Hobson*, 10 Colo. 66 ; *Edwards v. D. & R. G. R. Co.*, 13 Colo. 59.

In the circuit court of the United States, section 2186, *supra*, was construed as follows : " The court interprets ' proper ' title to mean ' paper ' title.  The word ' proper ' in the statute is manifestly a mistake.  By such error the word ' proper ' is used for the word ' paper.'  That is the law under which the claim of Mr. Clifford in this case arises.".  See *Latta v. Clifford*, 47 Fed. Rep. 618.

3. The view above expressed as to the meaning of the phrase, color of title, is confined to the statute under consideration.  We are aware that in *Lebanon Mining Co. v. Rogers*, 8 Colo. 37, it was intimated that color of title may exist without a writing ; but that was not the point decided in respect to the statute in question.  The color of title relied on in that case was based " entirely upon instruments of writing," so says the opinion ; and the decision was against appellant because it appeared that its possession was not under claim of title in good faith for the statutory period.  In that case it was also said that the plea of the statute is an affirmative defence.  So it is ; possession and payment of taxes must, of course, be affirmatively shown by evidence in the first instance ; and so also the acquisition of the paper title.  But when such evidence does not disclose bad faith on the

part of the party claiming under the statute, it would seem to be a work of supererogation to offer further evidence of good faith, unless in rebuttal of facts and circumstances shown by the opposite party. As has been said by the supreme court of Illinois construing this statute : " The law presumes that all men act in good faith, until there is some evidence to the contrary; " and again : " Color of title made in good faith is shown by any deed or instrument which purports on its face to convey title which a party is willing to and does pay his money for, apart from any fraud. The deed itself purports good faith, unless facts and circumstances attending its execution show the party accepting it had no faith or confidence in it." We see no reason to doubt the wisdom of the Illinois decisions ; nor do we consider the decision in *Lebanon Mining Co. v. Rogers, supra,* necessarily in conflict with them. *Brooks v. Bruyn,* 35 Ills. 392 ; *Hardin v. Gouveneur,* 69 Ills. 140.

In passing upon the demurrers in this case the following are to be taken as the admitted facts : Plaintiff was a married woman and owned the property in controversy in her own right at the time of the alleged conveyance, September 23, 1872 ; and the deed of that date to Marriott was then executed and delivered by her for a valuable consideration, as stated in the 3d and 4th defences. The question then arises : Was such deed valid and effectual to convey her estate under the then existing statute of conveyances ?

4. Counsel for plaintiff contends that the deed of September 23, 1872, mentioned in the 3d and 4th defences of the answer, was and is void, and does not give color of title.

For the last twenty years it has been the settled law in Colorado that, " Any woman, while married, may bargain, sell, and convey her real and personal property, and enter into any contract in reference to the same, as if she were sole." See act of Feb. 12, 1874, Gen. Stats. § 2278; *Wells v. Caywood,* 3 Colo. 493. But the deed in controversy was executed in 1872 ; and at that time a married woman could not convey her real estate except by substantial compliance

with the statute of conveyances then in force.    See Rev.
Stats. 1868, p. 111.

By section 17 just cited it was provided that to convey
her lands a married woman should unite with her husband in
making the conveyance; that she should acknowledge the
same, separate and apart from her husband; that the officer
hearing the acknowledgment should certify that the same
was made upon examination separate, apart from, and out of
the presence of her husband; and that the contents, meaning
and effect of such deed were by the officer fully explained to
the wife.   The certificate attached to plaintiff's deed shows
substantial compliance with all these provisions, and further
that plaintiff acknowledged that she freely and voluntarily
executed the deed, and relinquished her dower to the lands
and tenements therein mentioned without compulsion of her
husband, and that she did not wish to retract the same.    In
*Nippel v. Hammond*, 4 Colo. 215, a certificate substantially
like the one in this case was held to be sufficient, though the
notary in that case certified *expressly* that the wife was per-
sonally known to him; this point will be noticed hereafter.
There is some surplusage in the certificate, but that does not
invalidate the conveyance.    *Chester v. Rumsey*, 26 Ill. 98.

It is contended that the certificate of the notary does not
show compliance with the provisions of section 14 of the
statute of conveyances.    This was not essential to the valid-
ity of the deed *as a conveyance*.    A deed duly executed by a
person *sui juris* may be valid as a conveyance though not
acknowledged and certified as provided by section 14.    *Hol-
laday v. Dailey*, 1 Colo. 467, affirmed by U. S. Sup. Ct., 19
Wall. 606.    The advantage of having a deed acknowledged
and certified is that it "may be read in evidence, without,
in the first instance, additional proof of the execution there-
of."    See §§ 19 and 20, Statute of Conveyances; R. S. 1868,
p. 112; also, Gen Stats. §§ 216, 217; 1 Mills An. Stats.
§§ 447, 448.

Section 17 provided that section 15 should not apply to
conveyances by married women, but did not provide that

section 14 should not apply to such conveyances; hence, it is argued that, even though the certificate of acknowledgment was sufficient to make the deed valid *as a conveyance*, it was not sufficient to entitle it to be read in evidence without further proof in the first instance.   Another section of the same statute refutes this argument.   Section 19 provided : " All *such* deeds * * * *acknowledged or proved* in accordance with *this chapter* * * * may be read in evidence without in the first instance additional proof of the execution thereof."   This language was comprehensive enough to include deeds of married women *acknowledged* as provided by section 17, as well as deeds of other persons *acknowledged or proved* as provided by sections 14 and 15.   True, it did not include deeds of married women *proved* as provided by section 15, because at that time deeds of married women were specially excepted from the operation of section 15.

This view of the statute is altogether reasonable.   The certificate required by section 17 provided for the identification of married women with all reasonable certainty.   For example, in the present case, the officer certified that Henry J. Knight was personally known to him ; he further certified that he examined Elizabeth J. Knight, *wife of said Henry J. Knight*, apart from her husband, etc.   It is obvious that he could not have made such further certificate unless he knew Elizabeth J. Knight to be the wife of Henry J. Knight.

Some of the Illinois decisions cited are not applicable to this question, the statute of that state being different in respect to conveyances by married women.   See Cooke & Co.'s Ed. Ill. Stats. (1858), vol. 2, p. 963.   The dissenting opinion by Chief Justice Breese in *Lindley v. Smith*, 46 Ill. 529, is certainly applicable to the Colorado statute, and fully sustains the reasoning of the foregoing example.

The origin of the statutory requirements heretofore existing concerning conveyances by married women, is readily traceable.   By the ancient common law the method of conveying a married woman's lands was for her to unite with her husband in levying a *fine*.   This was a formal proceeding

in court, an essential part of which was that the presiding judge or judges examined and advised the wife privately concerning her rights, with the view to protect her against the undue influence of her husband, as well as to make sure that she did not make a disadvantageous disposition of her estate. If the proposed conveyance was approved, the whole proceeding was made a matter of record, and thus record proof of the conveyance of the wife's estate was preserved and parol proof excluded. 2 Blackstone, 348–355; *Martin v. Dwelly*, 6 Wend. 9; *Mount v. Kesterson*, 6 Cold. (Tenn.) 452; *Keller v. Klopfer*, 3 Colo. 135.

The requirement that a married woman, in order to convey her real estate, must execute and acknowledge her deed before an officer by whom she was to be first examined and informed of the meaning and effect of the deed separate and apart from her husband, preserved the essentials of the common law method. The certificate of the officer making the examination and taking the acknowledgment corresponded to the record proof made by the levying of a *fine*. Hence, under such statutes the decisions have been uniform that a married woman's deed could not be proved in the first instance by parol, but only by the certificate of the officer. Both the statutory and the common law methods of conveying the estates of married women are practically obsolete in Colorado at the present time. The married woman is in law deemed capable of managing her own affairs; she has the power as well as the right to convey her real estate without let or hindrance from any one; she requires no protection, and she suffers no restraints, in such matters.

The case of *Gomer v. Chaffee*, 6 Colo. 314, is not in point in this case. It is true, in that case it was said, " It is difficult to see how the statute of limitations can avail a defendant holding a void deed; " but the statute then under consideration was a very different statute from the one now relied on. Gen. Laws 1887, § 2335. The question of possession and payment of taxes under claim and color of title,

made in good faith, was not involved in the *Gomer-Chaffee* case.

5. Upon the admitted facts, the deed of plaintiff to Marriott, including the certificate of acknowledgment, must be held valid and effectual to convey plaintiff's estate in fee simple to the grantee named therein. It is scarcely necessary to add that such a deed, however invalid it may be shown to be by evidence *aliunde*, nevertheless constitutes color of title under the statute of limitations in question. See Sedgwick & Waite on Land Titles, § 780; *Mount v. Kesterson, supra; Griffen v. Stamper*, 17 Ga. 108. The third and fourth defences must each be held sufficient in law as an answer to the complaint.

The first special replication to the third and fourth defences is a plea of *non est factum;* in substance it denies that plaintiff executed the deed in controversy; and as defendant by his third defence relies upon a valid title in himself by virtue of such deed, such denial is a sufficient answer to such defence. The first special replication must also be regarded as a sufficient answer to the fourth defence, for though it does not traverse the averment of possession and payment of taxes by defendant under claim and color of title, it does allege that Marriott and those deriving title under him, including defendant, from the time they and each of them claim to have derived title respectively, *well knew* that the deed in controversy was not the deed of plaintiff; such allegation challenges and puts in issue the good faith of defendant's claim of title. There are also other replications putting in issue material allegations of each of the affirmative defences, including the third and fourth; so that each affirmative defence was in one or more substantial particulars sufficiently replied to, and the plaintiff was entitled to a trial upon the issues thus formed.

The second special replication to the third and fourth defences is not sufficient in law as an answer to either of said defences, and the demurrer thereto was properly sustained. There was error, however, in sustaining the demurrer to the

first special replication, and also in disregarding other replications as above shown. The judgment of the district court must therefore be reversed and the cause remanded for further proceedings in accordance with this opinion.

*Reversed.*