## No. 13,537.

### CASS, ADMINISTRATRIX *v.* BLAKE ET AL.
(56 P. [2d] 42)

Decided March 16, 1936.

382

Mr. Max D. Melville, Mr. Frank E. Hickey, Mr. Finlay MacF. Robinson, Mr. Dayton Denious, for plaintiff in error.

Mr. George K. Thomas, Messrs. Pershing, Nye, Bosworth & Dick, Mr. Norman A. Hutchinson, for defendants in error.

*In Department.*

Mr. Justice Butler delivered the opinion of the court.

When this case was argued orally Mr. Justice Butler was Chief Justice.

Plaintiff in error Maude B. Cass, as administratrix of the estate of Oscar D. Cass, deceased, brought suit against the defendants in error, Albyn B. Blake and Paul W. Blake as individuals and as trustees, Acceptance Credit Corporation and Denver-America Theatre Company, alleging that the defendants had wrongfully converted certain funds to which she was entitled, as evidenced and provided by a certain written instrument; and also alleging that the converted funds and their proceeds had been put in real estate known as the America theatre property and into the capital stock of Denver-America Theatre Company. Plaintiff sought by her complaint to have the real estate and the stock impressed with a trust. The case, being in equity, was tried to the court without a jury. Judgment went against the plaintiff, and she seeks a reversal thereof.

Acceptance Credit Corporation dealt in commercial paper. Cass was director and president and the two Blakes were directors. Class B' stock (the voting stock), except a few qualifying shares issued to directors, was owned entirely by Cass and the Blakes. Cass also owned a large block of Class A (nonvoting) stock. Cass also owned some valuable investment certificates, in effect promissory notes, issued by the Bishop-Cass Investment

Company. The certificates matured serially, one each year. The company carried $50,000 insurance on Cass's life, which insurance was to be applied to the retirement of any investment certificates unpaid at the time of Cass's death. In the latter part of the year 1927, Cass and the Blakes inquired of the bookkeeper for Acceptance Credit Corporation whether that company had enough surplus to pay the April dividend, and were told that it had not. Cass thereupon directed the bookkeeper to keep the books open so as to reflect some Bishop-Cass investment certificates that Cass "was considering putting into the company." The next day Cass endorsed investment certificates for $56,000, handed them to the bookkeeper and told him to enter them in the records as donated surplus. He promised to deliver additional certificates in a day or two, so as to make the total $72,000, but did not do so. Following instructions given to him by Cass, the bookkeeper entered $72,000 on the books of the company as donated surplus. Cass's avowed reason for putting the certificates into the assets of the company was that he wanted to make a better financial statement for the company with a firm with whom he wanted to discount some paper, and also wanted to send a copy to a Chicago bank where he was negotiating a loan, and also wanted the company to pay a dividend. The dividend later was declared and paid, as planned, and Cass received his share thereof. The company's statutory annual statement, signed by Cass and A. B. Blake and filed in the office of the secretary of state, carried as an asset the item "Surplus Donated, $72,000." The item was called to Cass's attention before the statement was filed.

On December 15, 1935, the following agreement was entered into:

"Agreement

"This Agreement, made and entered into this Fifteenth day of December, 1927, between Oscar D. Cass, party of the first part, Albyn B. Blake, Paul W. Blake

and Oscar D. Cass, acting as a trustee committee, party of the second part, Witnesseth:

"That, party of the first part is the owner of certain investment certificates of the Bishop-Cass Investment Company, said certificates numbered and in amounts as follows: [Listing certificates aggregating $72,320.]

"Witnesseth Further, That the party of the first part will loan the above mentioned certificates to parties of the second part in consideration of $1.00 in hand paid, and other considerations hereinafter mentioned, and,

"That, the above certificates are held in trust by parties of the second part, upon the following conditions.

"That, the parties of the second part have this day placed the above mentioned certificates in the assets of the Acceptance Credit Corporation.

"It Is Further Understood and Agreed, That inasmuch as the party of the first part has a contract filed of record with the Bishop-Cass Investment Company, Edward A. Bishop and Arthur P. Church, that the above certificates may be called for payment in full by the Colorado National Bank as trustee, and that party of the first part is obligated under the contract mentioned to place in the Colorado National Bank one certificate each year.

"It Is Further Understood and Agreed, That in the event said certificates are called as a whole that the cash so received will remain as part of the assets of the Acceptance Credit Corporation.

"It Is Further Understood between the party of the first part and the party of the second part that as this is considered a loan either of certificates or the cash realized thereon, that the party of the second part will deliver to the party of the first part the certificates numbered below or their cash equivalent on the dates specified: No. 837 or cash equivalent April 1, 1929. [The others serially, one each year to and including April 1, 1934.]

"It Is Further Understood and Agreed, That as this contract cannot be binding on the Acceptance Credit Cor-

poration and the performance of the same rests entirely with the parties hereto and in order to enforce the provisions of same, it is agreed that all Class 'B' stock of the Acceptance Credit Corporation now standing in the names of Albyn B. Blake, Paul W. Blake and Oscar D. Cass be endorsed in blank and placed in the hands of the party of the second part, who, as a trustee committee, is to hold same to deliver to the party of the first part in the event the conditions mentioned cannot be complied with, party of the first part to deliver back to party of the second part said stock as soon as any default under this agreement is remedied.

"It Is Further Understood and Agreed, That party of the first part may, beginning January 1, 1928, and from time to time as this contract remains in force, be advanced by the Acceptance Credit Corporation various sums of money, but not to exceed the sum of Ten Thousand ($10,000.00) Dollars, said advances to be paid by party of the first part to the Acceptance Credit Corporation immediately upon receipt of the certificates referred to in this agreement."

The agreement bears the signatures of all contracting parties.

Cass died six months after the making of the agreement, and Maude B. Cass was appointed administratrix of his estate. Thereafter Acceptance Credit Corporation collected the $50,000 Cass insurance and deposited it in a bank to the credit of its account. The company acquired certain gold notes secured by mortgage on the America theatre property, using for the purpose the money so deposited. As owner of two-thirds in amounts of the gold notes, the company appointed A. B. Blake as trustee under the mortgage. The company paid off, with the proceeds of the investment certificates donated to it by Cass, the second-mortgage gold notes, whereupon A. B. Blake, as trustee, executed a release of the second mortgage. A third mortgage on the property was refinanced and made a second mortgage for an increased amount. As addi-

tional security for the gold notes secured by the original second mortgage, The Bishop-Cass Theatres Company had pledged its leasehold on another theatre property. In consideration of the release of that leasehold from the pledge, that company conveyed to Acceptance Credit Corporation all of the capital stock of Denver-America Theatre Company.

The plaintiff in error contends that by reason of the foregoing transactions, there has been a wrongful conversion of Cass's investment certificates; that a constructive trust arose in favor of Cass and the plaintiff; and that, as the proceeds of the certificates were invested in the America theatre property and in the capital stock of Denver-America Theatre Company, the plaintiff is entitled to have said property and stock impressed with a trust to secure the payment of the judgment she seeks against the defendants in error for $58,760, the face value of the investment certificates claimed to have been converted.

██ There is nothing in the written agreement, or in the statutory annual statement of Acceptance Credit Corporation, to indicate that Cass, or the trustee committee, of which he was a member, merely loaned the investment certificates to that company, or that Cass retained any interest therein, or that the transaction was otherwise than an absolute, unqualified gift to the company, made honestly for the lawful purpose of increasing its assets; nor is there any entry on the books of the company so indicating. The fact that Cass's purpose was to enable the company to make a better financial statement and to pay a dividend is not inconsistent with the passing of absolute title. To suppose that Cass, or Cass and the Blakes, intended otherwise would be to charge him or them with deliberately perpetrating a fraud by giving the company a false appearance of prosperity, a fictitious showing of assets, for the purpose of establishing a credit to which it was not entitled. We cannot assume, without more proof than appears in the record,

that the purpose was fraudulent. Where different inferences may be drawn from the same state of circumstances, it is the duty of the court to presume in favor of innocent conduct rather than of guilty misconduct or intentional wrong. 10 R. C. L., p. 875, § 20; *Knight v. Lawrence*, 19 Colo. 425, 36 Pac. 242. Where a transaction is capable, under the evidence, of two constructions, one that it is fair and honest, the other that it is unfair or dishonest, the court should give the transaction the former construction.

██ It seems to us, and we hold, that the transaction constituted a gift; that, being executed, the gift could not be revoked in whole or in part; that Acceptance Credit Corporation acquired absolute, unqualified title to the investment certificates, freed from all interests and claims of Cass; that the certificates became assets of the company to the same extent as its other assets; that the company had a lawful right to use them, as well as its other assets, for corporate purposes; that the company's use of the proceeds thereof in the acquisition of the America theatre property and the capital stock of Denver-America Theatre Company did not constitute a wrongful conversion of the certificates; and that no constructive trust in favor of the plaintiff attached to that property by reason of such use of the certificates, or the proceeds thereof.

It is obvious that Cass and his cotrustees, in delivering the investment certificates to the company, were not guilty of wrongful conversion. It was their duty under the agreement to so deliver them. Moreover, as we have seen, Cass himself joined in the delivery of the certificates—indeed, made the delivery himself—and he could not, and the administratrix of his estate cannot, successfully contend that such delivery constituted a wrongful conversion; nor does the administratrix so contend. No constructive trust resulted from such delivery.

██ Acceptance Credit Corporation was not a party to the written agreement, and by the express terms

thereof the company was not to be, and could not be, bound thereby. Note the following provision in the agreement: "It Is Further Understood and Agreed, That as this contract cannot be binding on the Acceptance Credit Corporation and the performance of the same rests entirely with the parties hereto and in order to enforce the provisions of same, it is agreed that all Class 'B' stock of the Acceptance Credit Corporation now standing in the names of Albyn B. Blake, Paul W. Blake and Oscar D. Cass be endorsed in blank and placed in the hands of the party of the second part, who, as a trustee committee, is to hold same to deliver to the party of the first part in the event the conditions mentioned cannot be complied with, party of the first part to deliver back to party of the second part, said stock as soon as any default under this agreement is remedied."

The agreement is unique; it is improbable that its like will come before the courts again. If the trustee committee (Cass himself being one of the three members) was unable or otherwise failed to perform the conditions on its part to be performed, the Class "B" stock, held by the committee as collateral security to secure such performance, was to be delivered to Cass, he to redeliver the stock as soon as any default should be remedied, and Cass, party of the first part, would have the right to insist upon such delivery by himself and his cotrustees, parties of the second part. As to whether Cass would have had, and as to whether the administratrix now has, any other remedy, we need not determine at this time. Certain it is that under the pleadings in this case the plaintiff is not entitled to judgment against the defendants, or any of them; and the trial court properly so held.

The judgment is affirmed.

MR. JUSTICE BOUCK, MR. JUSTICE HOLLAND and MR. JUSTICE YOUNG concur.