Nippel *v.* Hammond and Hammond, Executrix.

| 4 | 211 |
| 6 | 265 |
| 4 | 211 |
| 19 | 434 |

1. All written powers are to be somewhat strictly construed. An agent's authority to act must be found in express words or by necessary implication in the power. A general power to incumber real estate, without declaring for whose benefit it may bé incumbered, will not warrant the attorney in incumbering it for the benefit of himself or any third person.

2. The statute (R. S., p. 111, § 17), concerning conveyances by married women, required that her acknowledgment should be taken "separate and apart" from her husband, and the officer "shall certify that the same was made upon examination separate and apart from and *out of the presence* of the husband, that the contents, meaning and *effect* of such deed were, by him, fully explained to her." *Held,* that a certificate of acknowledgment, containing the words "separate and apart," but omitting the words "out of the presence," was a substantial compliance with the statute. And that the "contents and meaning" being explained, the party could not be said to be ignorant of the effect of the deed.

3. It is not necessary to *prove* (R. S., p. 109, § 14), the identity to the certifying officer, of one making acknowledgment of the execution of a deed, when the officer has knowledge of the identity from a source that satisfies his conscience : as through introduction by a mutual friend.

4. Although the wife stands in the relation of a surety to her husband when her realty is mortgaged to secure his individual debt, yet if she unite with her husband in the execution of a mortgage, and makes due acknowledgment thereof, it will be upheld although no consideration passed to her.

5. It is a presumption of law, that the shares of several co-tenants, whether they be tenants in common or joint-tenants, are equal.

6. Where the parties to a trust deed stipulate that there shall be no equity of redemption, they are bound thereby; and that a court of equity prohibited a sale under such trust deed for a short time, is a matter of which neither the grantor, nor one holding under him, can complain.

7. To grant affirmative relief to a defendant in equity, in the absence of a cross-bill, is not in conformity with approved practice.

*Error to District Court of Arapahoe County.*

The power of attorney mentioned in the opinion of the court, which was given by Hofstadt to Anthony Bohlscheid, was as follows :

"Know all men by these presents, that I, Arnold Hof-

stadt, of the county of Park, in the Territory of Colorado, have made, constituted and appointed, and by these presents do make, constitute and appoint Anthony Bohlscheid, of the county of Arapahoe, in the Territory of Colorado, my true and lawful attorney for me and in my name, place and stead, to sell and convey by warranty deed, or deed of trust, or by deed of mortgage, or to lease for one or more years, not exceeding three, as my said attorney may deem most advisable or proper in the premises, all of that portion of lots numbered thirty (30) and thirty-one (31) and thirty-two (32), in block B, in the east division of Denver City, giving and granting unto my said attorney full power and authority to sell and convey the aforesaid described lands by warranty deed or deed of trust, or deed of mortgage, or to lease and rent for one or more years, not exceeding three, as my said attorney may deem most advisable or proper in the premises, and to that end to sign my name to any conveyance or lease he may make to said lands, and to do and perform all and every act and thing whatsoever, requisite and necessary to be done in and about the premises, as fully to all intents and purposes as I might or could do if personally present with full power of substitution and revocation, and an attorney under him to appoint, if necessary, in the premises, hereby ratifying and confirming all that my said attorney or his substitute shall lawfully do or cause to be done, by virtue hereof.

In witness whereof I have hereunto set my hand and seal the 14th day of July, A. D. 1873.

(Signed)     ARNOLD HOFSTADT."

"Signed, sealed and delivered in presence of A. M. James, and duly acknowledged before a notary."

THATCHER, C. J.   In December, 1872, Adeline Groulough, being seized of the premises in dispute, united with her husband in conveying the same to Arnold Hofstadt and Zevirah Bohlscheid. The vendees paid $1,300 cash, and executed a mortgage on said property to secure the payment of

$900, being the balance of the purchase-money. This mortgage will hereafter be referred to as the Groulough mortgage. In July, 1873, Arnold Hofstadt, having removed from Denver, executed a power of attorney to Anthony Bohlscheid, the husband of his copurchaser, empowering him to sell and convey by warranty deed, or deed of trust, said premises. In August, 1873, Anthony Bohlscheid procured a loan of $2,000 from Abraham A. Hammond for which sum he executed his individual note, the payment of which was secured by trust deed on said premises executed by Zevirah Bohlscheid and Anthony Bohlscheid, her husband, and by Arnold Hofstadt, through Anthony Bohlscheid, his attorney, in fact. Although the sum borrowed was $2,000, Bohlscheid received but $1,300, the remaining $700 being placed in the hands of A. S. Blake, Esq., the trustee named in the deed, to be paid by him upon the Groulough mortgage, as soon as a certain suit against the premises then pending in the district court of Arapahoe county, in which Adeline Groulough and Joseph Groulough *et al.* were defendants, should be decided in their favor.

In January, 1874, Arnold Hofstadt and Zevirah Bohlscheid sold and conveyed said premises to Caroline Nippel, the incumbrances created by the mortgage and deed of trust not having theretofore been released. June 2d, A. D. 1875, the Groulough mortgage was foreclosed pursuant to a decree of court, and Mrs. Mary B. Hammond, relict of her husband, Abraham A. Hammond, being then dead, bought the property at the foreclosure sale and received from the master in chancery a certificate of sale therefor.

By her bill the complainant seeks the cancellation of the trust deed and the redemption of the property from the master's sale.

Our first inquiry will be directed to a consideration of the power of attorney under which Anthony Bohlscheid acted in executing the deed of trust.

By the power of attorney, Anthony Bohlscheid was authorized "in the name, place and stead" of his principal

"to sell and convey the premises by warranty deed, or deed of trust, or by deed of mortgage, as he might deem advisable." The trust deed was executed for the sole purpose of securing the individual note of Anthony Bohlscheid. It is recited in the deed that "Anthony Bohlscheid has executed one promissory note, payable to the order of A. A. Hammond."

All written powers are to be somewhat strictly construed. An agent's authority to act must be found in express words or by necessary implication in the power.

If the agent transcends the prescribed limits of his authority, the act is nugatory. By an inspection of the record, Mr. Hammond could have learned the extent to which and the purpose for which Anthony Bohlscheid was empowered to act by virtue of the letter of attorney, and of its legal effect he was bound to take notice at his peril. There is neither in terms nor by implication any delegation of authority to the attorney to incumber the property for the benefit of any other person than his constituent. The power conferred is clearly a power to act for, in the name and for the benefit of the principal. A general power to incumber real estate without declaring for whose benefit it may be incumbered, will not warrant the attorney in incumbering it for the benefit of himself or any third person. It hence results that the deed of trust was ineffectual to convey Arnold Hofstadt's interest in the premises described therein.

It is attempted to invalidate the trust deed as to Mrs. Bohlscheid's interest on the ground that the certificate of acknowledgment is defective. The objections necessary to consider are :

First — That the notary public did not make known to Zevirah Bohlscheid the "effect" of the trust deed.

Second — That said certificate does not state that the notary examined the said Zevirah Bohlscheid "out of the presence" of her husband.

Third — That the officer does not certify that Mrs. Bohl-

scheid was proved by the oath of some competent, credible witness to be the identical person who executed the deed.

The notary, after certifying that Zevirah Bohlscheid and Anthony Bohlscheid personally known to him as the persons whose names were subscribed to the trust deed, appeared before him in person and acknowledged that they signed, sealed and delivered the same as their free and voluntary act, proceeds in his certificate as follows : " And the said Zevirah, wife of the said Anthony Bohlscheid, having been by me examined separate and apart, and out of hearing of her husband, and the contents and meaning of said trust deed having been by me made known, and fully explained to her, acknowledged that she had freely and voluntarily executed the same and relinquished all her right, title and interest to the lands and tenements therein mentioned, without compulsion of her said husband, and that she does not wish to retract the same."

As will be observed, instead of the statutory words, " out of the presence," the certifying officer uses the word, " out of hearing," and omits the statutory word " effect" after the words " contents and meaning." R. S., p. 111, § 17.

The language of section 17 is : " Married women may convey their estate in lands by uniting with their husbands in any conveyance thereof, and acknowledging the same separate and apart from their husbands, and the officer hearing such acknowledgment shall certify that the same was made upon examination separate and apart from, and out of the presence of the husband of such woman, that the contents, meaning and effect of such deed were by him fully explained to her."

Is the omission of the words, " out of the presence of," fatal to the acknowledgment? There must be a *substantial*, though not necessarily a literal compliance with the statute. If the substituted words employed, considered in connection with the entire acknowledgment, do not reasonably import that Mrs. Bohlscheid was examined " out of the presence " of her husband, the acknowledgment would be

insufficient. Within the intent of the section just quoted the words, "separate and apart from," evidently include in their meaning "out of the presence." The section in terms declares that the married woman shall *acknowledge* the deed "separate and apart from her husband," omitting the words out of the presence. That the legislature intended by this language that the acknowledgment should be taken in the absence of the husband is apparent from the subsequent part of the section, which directs that the officer taking such acknowledgment shall certify that the same was made upon examination, separate and apart from, and *out of the presence of the husband.* By no rational construction can it be said that when a husband is in the presence of his wife, that she is separate and apart from him. Accordingly it is held, where an examination of the wife is required by statute to be made "separate and apart from her husband," that such examination must necessarily be out of the presence and hearing of the husband. *McCandless* v. *Engle*, 51 Penn. St. 309.

The supreme court of the United States, in the case of *Deery* v. *Cray*, 5 Wall. 807, held that a certificate to the effect that a married woman was examined *apart.* from her husband, can mean nothing less than "that the husband was not present when she was examined." The officer certifies that the contents and meaning of the deed were made known and fully explained to Mrs. Bohlscheid. With knowledge and full explanation of the contents and meaning of the deed she executed, she could not be said to be ignorant of the *effect* of the deed. Considered as a whole we are satisfied that the certificate contains every *essential* requirement of the statute, and more than this the law does not exact. *Canal and Dock Co.* v. *Russell*, 68 Ill. 432, and cases there cited; *Morse* v. *Clayton*, 13 Smedes & Marshall, 381; *Davar* v. *Cardwell*, 27 Ind. 478.

Not only is the acknowledgment in substantial compliance with the statute, but the evidence, so far as it is responsive to the issues, shows the absence of fraud and

imposition ; that the husband was in fact not present when the wife acknowledged the deed; that the officer, before taking her acknowledgment, performed his duty by making known and explaining to her the contents and meaning thereof.

The allegation in the bill that Zevirah Bohlscheid did not personally appear before the certifying officer is wholly unsupported by evidence.

It is objected that even if Mrs. Bohlscheid did personally appear before the certifying officer, and acknowledge the deed of trust in compliance with the statute, the acknowledgment is without validity, for the reason that the officer failed to certify that Mrs. Bohlscheid was *proved* by the oath of some competent, credible witness to be the identical person who executed the deed. R. S., p. 109, § 14.

It is admitted that no one was examined on oath as to the identity of Mrs. Bohlscheid. By her husband, at his own house, the officer was introduced to her. The husband and the notary were well acquainted with each other. The statute of New York regulating the acknowledgment of deeds (1 R. S., N. Y., p. 758, § 9, 15, marginal), provides : "No acknowledgment of any conveyance having been executed shall be taken by any officer, unless the officer taking the same *shall know or have satisfactory evidence* that the person making such acknowledgment is the individual described in and who executed such conveyance." The courts in that State are agreed that "satisfactory evidence," within the intent of that section, means legal evidence to be taken *under oath.* When may the oath be dispensed with ? Under what circumstances is the officer justified, in the absence of such sworn evidence, in certifying an acknowledgment ? This question was very fully considered by the supreme court (General Term) of New York, in the case of *Wood* v. *Bach,* 54 Barb. 142. In that case, the court, repudiating the earlier doctrine laid down in *Watson* v. *Campbell,* 28 Barb. 422, and in *Jones et al.* v. *Bach et al.,* 48 id. 568, says: "Knowledge of persons

and their identity is most frequently acquired by introduction through mutual friends, and when such introduction has taken place, the parties certainly know each other. Every day men in social life thus become known to each other, and I never heard that such an introduction was not sufficient, or that any length of time after it must elapse to justify a statement or certificate that they were acquainted. When an introduction does not proceed from such a source as satisfies the officer's conscience, undoubtedly he should not certify that he knows the party, but should require 'evidence,' which, of course, must be on oath; but when the character of the introducer—whom the officer knows— conveys knowledge to the officer's conscience, he may well be satisfied and may properly give the certificate."

" In this case, the parties making the acknowledgment were introduced to the officer, the ordinary way of becoming known, by one in whom he had such confidence, that he had no doubt that they were the persons they purported to be.    Upon that, in social life, he would have been regarded as knowing them, and knowing them in social life, he had the right, if his own conscience were convinced, from that knowledge of their identity, to take their acknowledgment in his official capacity.    Suppose these persons had been introduced to the notary by the same gentleman a week before, and that they had gone to him when they made the assignment, and he had taken their acknowledgment, will anybody pretend that he could not certify that he knew them?    That case does not differ in principle from this."

These views, we think, are a fair reflex of the intention of our legislature in enacting the statute under consideration. To adopt a different construction would, we think, be to depart from the reasonable purpose of the framers of the law, and to aim a dangerous blow at the stability of land titles in Colorado.

It is insisted that if this interpretation be enforced, that the certifying officer may be more easily imposed upon, than

if an oath be required. In answer to this objection, the court, in the case cited *supra*, further says: "If parties desire to personate others, there is much more probability of it being done through the medium of the oath of a stranger, experience having shown that persons willing to commit perjury for such purposes are not difficult to be found, than that it will be accomplished through the instrumentality of an introduction by a respectable friend to a reputable officer."

But it is urged that prior to the act of February 12, 1874 (Sess. Laws, p. 185), a married woman could not secure the debt of her husband by a mortgage or trust deed on her real estate. It is true that before the passage of that act she could neither alienate absolutely, nor mortgage her realty, without uniting with her husband. But here the provision of the former statute requiring husband and wife to join in the execution of a conveyance was observed. Although the wife stands in the light of a surety to her husband when her realty is mortgaged to secure the individual debt of her husband, and although her realty becomes thereby subject to absolute alienation by foreclosure of the mortgage, the better doctrine is, that if she unite with her husband in the execution of the mortgage and make due acknowledgment thereof, it will be upheld even though no consideration passed to her. *McFerren et al.* v. *White and wife*, 6 Coldwell, 499; *Swan* v. *Wiswall*, 15 Pick. 126; *Philbrook* v. *McEwen et al.*, 29 Ind. 347; *Hawley* v. *Bradford*, 9 Paige's Ch. 199; *Eaton* v. *Nason*, 47 Me. 132; *Demarest* v. *Wynkoop*, 3 Johns. Ch. 129.

It is assigned for error that the court, by its decree, held that the trust deed created a lien upon the undivided half of the premises in controversy. The bill alleges that the premises were conveyed by Adeline Groulough and Joseph Groulough "by deed jointly to Arnold Hofstadt and Zevirah Bohlscheid." It is a presumption of law, that the shares of several co-tenants, whether they be tenants in

common or joint-tenants, are equal. 1 Washburn on Real Property, * 407.

This presumption is not only not rebutted, but is strengthened by the evidence adduced. This specification of error is, therefore, not well founded.

The court found that there was due to Mary B. Hammond in her own right eleven hundred and two dollars and sixty-seven cents (being the sum for which the premises were sold to her at the foreclosure sale), with interest thereon at ten per cent per annum, from the 2d day of June, A. D. 1875, to the date of the finding, and that there was due to Mary B. Hammond as executrix of the estate of Abraham A. Hammond, deceased, upon the note mentioned in the deed of trust, the sum of eleven hundred dollars with interest thereon at the rate of one and one-half per cent per month, from the 22d day of January, A. D. 1875, to the date of the finding, and that for said sum with interest, the said deed of trust was an incumbrance and second lien upon the said undivided one-half of the premises in controversy. These findings were justified by the evidence. As of the $2,000 purported to be loaned on the promissory note secured by the trust deed, only $1,300 reached the hands of the borrower, $700 having been returned by Mr. Blake, the trustee, the court properly computed the amount due on the basis of a $1,300 loan.

It is assigned for error that the time limited—ten days—within which to redeem was oppressively short.

It is insisted that, following the rule laid down in *Packard v. King*, 3 Col. 211, "the time in which payment is to be made should not be limited to a shorter period than ninety days, the life-time of an execution." That rule does not apply to this case. From the foreclosure sale, Mrs. Nippel could have redeemed without a decree of court at any time within the period fixed by statute. That period had elapsed long before the rendition of the decree. Under the trust deed the parties thereto stipulated that there should be no equity of redemption. By their stipulation they are bound.

That the court, in the exercise of its equity discretion, pro-
hibited a sale under the trust deed for a short space of time
is not a matter of which the plaintiff in error can complain.

The court decreed *inter alia* as follows:   " And it is
further ordered, adjudged and decreed by the court, that
in the event of the said Caroline Nippel failing to pay unto
the said Mary B. Hammond in her own right or as execu-
trix of the estate of the said Abraham A. Hammond,
deceased, *either* the said sum of $1,102.67, with interest *or*
the said sum of $1,100, with interest for the purposes, and
in the time and manner herein provided, the same appear-
ing to the court by the proofs and report of the said master
to be taken and made in accordance with this decree, and
in that event the said David W. Crater, master in chancery
as aforesaid, shall make, execute and deliver unto the said
Mary B. Hammond, a master's deed for the whole of the
aforesaid premises described in said bill, and which deed
shall convey to the said Hammond the absolute fee simple
title to the said above-described premises, and shall forever
bar any right, title, benefit and equity of redemption which
the said Caroline Nippel, or her heirs or assigns, or her
grantors, have or may have had in said premises.   And
upon the making, execution and delivery of said last-men-
tioned master's deed unto the said Mary B. Hammond, she,
the said Mary B. Hammond, is adjudged to have full title
to it, and full right to an immediate entry upon and full
possession of said premises to the exclusion of said Caroline
Nippel or any of her assigns, lessees or representatives, and
to the exclusion of all other persons whatsoever."

It will be observed that the court decreed that upon
failure of Mrs. Nippel to pay either the sum found due on
the trust deed, or certificate of sale, the master should exe-
cute a deed to Mrs. Hammond for the entire premises.
This was clearly error.   Had she paid Mrs. Hammond the
amount due her, in her own right, as purchaser at the fore-
closure sale, upon no principle of law or equity, had Mrs.
Hammond, either in her own right or in her representative

capacity, any interest in, or right to a deed of, the premises as an entirety. Only, after a duly advertised sale of the premises to satisfy the trust deed (in the event that the first lien had been discharged by redemption), could an undivided half of the premises have been sold and conveyed. This part of the decree is inconsistent with other parts, and it is claimed by defendant in error that it is a clerical mistake.

But we cannot say that it did not operate to Mrs. Nippel's prejudice. By what right did the court grant specific relief upon the defendant's answer? It was not only decreed that possession of the premises be surrendered to Mrs. Hammond, but also that an order of *habere facias* should be issued for the purpose of enforcing the decree. It was also decreed that upon a certain contingency named in the decree, Edmund A. Willoughby, who was sheriff of the county of Arapahoe when the trust deed was executed, should sell and convey an undivided half of the premises in controversy, in the manner as provided in the said trust deed. It is evident that the court, having all the parties in interest before it, and having, by the evidence adduced, acquainted itself with the facts, sought to adjust completely all the equities between the parties by its decree. This was undoubtedly the proper course if warranted by the pleadings. But to grant affirmative relief to defendant in the absence of a cross-bill is not in conformity with approved practice. In the case of *Stone* v. *Smoot*, 39 Ill. 409, which was a suit in chancery brought for the purpose of enjoining the further prosecution of an action of ejectment, the lower court rendered a decree, no cross-bill having been filed, that the plaintiff in error (being the defendant in the ejectment suit) surrender possession of the premises to defendant in error. The supreme court says: "The defendant only having answered the bill and failing to file a cross-bill, it was manifestly wrong to decree specific relief to the defendant. When the bill was dismissed, nothing remained upon which the court could act, except to render

a decree for costs. A decree requiring complainant to surrender possession was, in the absence of a cross-bill, no more authorized than to have rendered such a decree on a motion entered by defendant for such relief. This being affirmative relief, it could not have been properly granted, except on a bill filed for the purpose of obtaining it, either as an original or cross-bill." With a view to a complete adjustment of the equities between the parties, the court might have directed the filing of a cross-bill. But in its absence the court erroneously decreed specific relief. *Abbott* v. *Monti*, 3 Col. 561.

The decree of the lower court will be reversed, with leave to the defendants to file a cross-bill, without prejudice to the testimony already taken.

*Reversed.*