J. R. SHOMAKER AND J. W. HINSON AS PARTNERS UNDER THE FIRM NAME OF J. R. SHOMAKER & COMPANY, *Plaintiffs in Error*, v. T. WATERS AND R. F. DAVIS, PARTNERS UNDER THE NAME OF WATERS & DAVIS, *Defendants in Error*.

Under the constitution and laws of Florida a husband has no power to mortgage the crops grown on the separate statutory real estate of his wife, without her written consent as required in the constitution, and a mortgage on such crops without her written consent, as thus required, is void, and affords no basis for a claim against parties who buy such crops.

This case was decided by Division B.

Writ of Error to the Circuit Court for Jackson County.

The facts in the case are stated in the Opinion of the court.

*Wm. B. Farley,* for Plaintiffs in Error;

*D. J. Jones,* for Defendants in Error.

HOCKER, J.—The plaintiffs in error sued the defendants in error in the circuit court of Jackson county for damages which the declaration alleges they sustained by reason of the purchase by the defendants in error of certain bales of cotton from one J. T. B. Adams upon which the plaintiffs claimed a lien by virtue of a mortgage upon all the cotton, corn and other products grown by Adams upon his farm in Jackson county during the year 1904, and also upon a grey mare and two mules. It is alleged that said mortgage was given to secure the purchase price of the two mules amounting to $275.60, and also to secure all other advances made by the plaintiffs to said Adams in money, groceries, goods, wares and merchandise to aid him, said Adams, in the business of planting and farming in Jackson county; that $314.60 is still due upon said mortgage, besides interest and attorneys' fees, and that the cotton crop raised by said Adams upon his farm in Jackson county in 1904, was subject to the lien of the mortgage and liable for his debts aforesaid; that the defendants in September, 1904, purchased of said Adams three bales of the lint cotton raised on his farm and subject to the aforesaid lien, and did place the same beyond the reach of the plaintiffs, to their damage of three hundred dollars. It is alleged that the mortgage was dated 7th of December, 1903, and duly recorded in the record of mortgages of Jackson county on the 10th of December, 1903, and was due and payable October 1st, 1904. The defendants pleaded not guilty, and that the plaintiffs were not damaged as alleged. Issue was joined on these pleas, and a trial had which resulted in a judgment for the defendants. The plaintiffs are here on writ of error to this judgment.

There are a large number of assignments of error, but as it seems to us the whole case of the plaintiffs turns on one point we shall confine ourselves to the considera-

tion of that question. It is shown in the evidence that
when the mortgage was executed upon which the plaintiffs
base their rights J. T. B. Adams was married to Mrs.
Kate Schouppe. He lived with her on her own farm and
the cotton which Adams sold the defendant was raised on
his wife's farm. It does not appear that she contracted
or authorized her husband to contract any part of the debt
secured by the mortgage. Mrs. Schouppe says that the
crop raised on her farm was her crop. She paid for some
of the labor employed by Adams in raising the crop, and
for a part at least of the fertilizer, and also furnished the
provisions. Adams appears to have left his wife in the
latter part of 1904. She says she cultivated all the farm
and called it her farm; that the crop was made by her chil-
dren and the hired man. Adams seems to have furnished
the mules that worked on the farm and to have had as the
husband of his wife some sort of control over the farm.
It does not appear that he had any interest in the farm
or the crops other than that which the statute gives him.
The mortgage is not signed by Mrs. Schouppe (Adams),
nor does it appear that she in any way authorized its exe-
cution. We are thus brought face to face with the ques-
tion whether a husband under our constitution and stat-
utes has any authority or right to mortgage the crops
grown on his wife's land to secure his own obligations
without her consent given as provided in the constitution.
We presume that the plaintiffs rely upon section 2208
General Statutes of 1906, which provides that any person
may give a lien upon crops and products for advances
procured to aid him in planting. We do not think this
section of the statutes can be held to authorize a person to
give a lien upon any crop or product which is not his
own.

Article XI of the present constitution is as follows:

"Section 1. All property, real and personal, of a wife

owned by her before marriage, or lawfully acquired afterwards by gift, devise, bequest, descent, or purchase, shall be her separate property, and the same shall not be liable for the debts of her husband without her consent given by some instrument in writing executed according to the law respecting conveyances by married women.

Section 2. A married woman's separate real or personal property may be charged in equity and sold, or the uses, rents and profits thereof sequestrated for the purchase money thereof; or for money or thing due upon any agreement made by her in writing for the benefit of her separate property; or for the price of any property purchased by her, or for labor and material used with her knowledge or assent in the construction of buildings, or repairs, or improvements upon her property, or for agricultural or other labor bestowed thereon, with her knowledge and consent.

Section 3. The legislature shall enact such laws as shall be necessary to carry into effect this article."

When the case of Marye v. Root, 27 Fla., 453, 8 South. Rep. 636, was decided it involved the construction of the constitutional provision of 1868, regarding the property rights of married women. The constitutional provision at that time (Par. 26, Art. IV) was as follows: "All property both real and personal of the wife owned by her before marriage or acquired afterwards by gift, devise, descent or purchase shall be her separate property and not liable for the debt of her husband."

It was contended in the above cited case under the statutes and law as it then existed, the rents and profits of the wife's land belonged to the husband and could be subjected to the payment of his debts. But the court held otherwise. It was held that the beneficial use of the wife's land could not be subjected by creditors to the payment of these debts; that the only qualification was the

27—Vol. 59.

statutory provision; "that the property of the female shall remain in the care and management of the husband," and that this proviso was to be strictly construed; that "the title to the wife's property shall not be taken on execution for her husband's debts, yet the property shall remain in the care and management of the husband. This was nothing more than consigning to the care and management of the husband the wife's property with the unmistakable declaration that the *title* to it should continue separate, independent and *beyond the control of her husband,* and the property should not be taken *against her will* to pay his creditors." The further discussion of this question in the opinion emphasizes the proposition that the rents and profits of the wife's land did not become the husband's by virtue of the provision giving him the control and management of the property or by virtue of other provisions of the statute.

The constitution of 1885 does not modify or change the relation of the husband to the wife's property thus ascertained in the case of Marye v. Root, *supra,* except that it provides specifically how her separate property may be made liable for his debts; that is to say, with "her consent given by some instrument in writing executed according to the law respecting conveyances by married women. It seems, therefore, to be settled that the rents and profits of a wife's separate statutory property are her property, the *title* to the crops raised on her land by her husband is prima facie in her and not in him. To hold that the crops raised by the husband on the wife's land are his, and the title to them is in him, would be equivalent to depriving her of the title to the rents and profits. For other features of the law relating to a married woman's property rights, see Fritz v. Fernandez, 45 Fla., 318, 34 South. Rep. 315; Graham v. Tucker, 56 Fla., 307, 47 South Rep. 563; Micou .v. McDonald, 55 Fla., 776, 46 South. Rep. 291. This is

not a suit to subject a married woman's property in equity or otherwise. We are simply required to determine as a matter of law whether the husband without the written consent of his wife as required in the constitution, can lawfully mortgage the crops on her land. It is admitted by the plaintiff in error that the land belonged to Mrs. Schouppe before Adams married her and belongs to her yet. It does not distinctly appear whether her title is a legal or an equitable one, but the witnesses call it *her land* and *her farm,* and we presume that they mean she has the legal title to the land, as this is the usual custom among the laity in speaking of legal titles. If her title is an equitable one we do not see how that fact could give validity to the mortgage in this case. Our opinion is that the mortgage upon which plaintiffs rely to give them a lien on the cotton bought by the defendants is void as to cotton and other products of Mrs. Schouppe's land, and affords no basis for a claim against the defendants.

We have not considered any other question as to the right of action.

The judgment below is affirmed.

TAYLOR and PARKHILL, J. J., concur.

WHITFIELD, C. J., and SHACKLEFORD, and COCKRELL, J. J, concur in the opinion.