HOYT *v.* GILLEN.

1. GIFTS—EQUITY—DELIVERY—GIFTS INTER VIVOS.
   A valid gift of a mortgage or other chose in action may be made by manual delivery without a written assignment.

2. SAME—MORTGAGES—CHOSES IN ACTION.
   Evidence tending to show the delivery of a mortgage and note as an intended gift from decedent to defendant, *held,* to warrant a finding that the gift was executed as claimed.
   McALVAY, C. J., and KUHN, STONE, and OSTRANDER, JJ., dissenting.

Appeal from Washtenaw; Kinne, J. Submitted April 17, 1914. (Docket No. 64.) Decided July 24, 1914.

Bill by Gideon L. Hoyt, as administrator of the estate of Matthew Shittenhelm, deceased, against Ella Gillen and another for the recovery as a part of said estate of a note and mortgage. From a decree for defendants, plaintiff appeals. Affirmed.

*Cavanaugh & Burke,* for complainant.

*Arthur Brown,* for defendants.

BROOKE, J. The bill in this case is filed by the administrator of the estate of Matthew Shittenhelm for the purpose of securing possession of a certain note and mortgage for $1,600, made by defendant Egbert Gillen to complainant's intestate. The said note and mortgage are claimed by the defendant Ella Gillen as a gift *inter vivos* from complainant's intestate. Defendant Ella Gillen files a cross-bill praying that she be declared to be the lawful and absolute owner of said note and mortgage. The record shows that Matthew Shittenhelm died on the 8th day of August,

1913, being at that time about 75 years of age; that he had lived in the household of defendant Ella Gillen for a great many years prior to his death. Though unrelated to her, he appears to have occupied a position in the family somewhat akin to that of a member of the household. He, however, paid board to her at the rate of $3.50 per week. In the summer of 1913 he fell ill, and it is the claim of the defendant Ella Gillen that on a day about two or three weeks prior to his death the note and mortgage in question were given to her by the complainant's intestate in part payment for the care she had bestowed upon him during the latter years of his life. The evidence of the gift is confined to the testimony given by Ruth Gillen, a young woman 21 years of age, and a daughter of the defendant Ella Gillen. It is as follows:

"*Q.* Some time previous to his having died, do you remember of his giving your mother any papers?

"*A.* One afternoon.

"*Q.* Do you remember the occasion?

"*A.* Oh, yes; I remember the occasion.

"*Q.* Do you remember when it was, about how long before he died?

"*A.* It was about two or three weeks; I don't remember the exact date.

"*Q.* And where had he been? Where were you sitting?

"*A.* I was sitting in the sitting room. Mother and I were busy sitting there sewing, and Matt was sitting in the rocking chair in the bay window, where he always sat, and he got up and went upstairs, and when he came back he had some papers in his hand.

"*Q.* Do you know what the papers were?

"*A.* No; I didn't see them. They were all together, and he handed them to Ma. I noticed they were yellow papers, but that is all.

"*Q.* What did he say?

"*A.* He said, 'Take those papers; I want you to have them.' I don't remember exactly, but he said something about their never having been put on record. 'Take these; I want you to have them.'

"*Q.* And what time of the day was that, about?

"*A.* It was along after dinner, about 2 or 2:30, somewhere along there.

"*Q.* And where did he go to get these papers?

"*A.* He left the room and went upstairs."

On cross-examination the witness testified:

"Mr. Shittenhelm died in August, 1913. I do not know the date. This paper, the abstract, and other papers were delivered two or three weeks before his death. My mother and I and Mr. Shittenhelm were the only parties present at that time. He said to her that he wanted her to have those papers. He stated they were not on record. I do not remember his words. My mother took them. I saw them after she had them two or three days. Mr. Shittenhelm paid his board to my mother. He didn't work any for about, I guess it was, three or four years; he had the whooping cough, and after that he had not worked at all. He worked around to amuse himself around the house. He was a thrifty man, and the only thing I ever heard him say about giving the papers to Mrs. Gillen is what I have said.

"*The Court:* It seems to me that you do not repeat the language exactly, but you repeat it in substance. What was said when he handed these papers to your mother?

"*A.* I don't remember the exact words, but he brought them out and told her he wanted her to have them now, and said something about their not being on record."

The record shows that complainant's intestate was accustomed to keep his valuables, papers, money, etc., in an unlocked trunk located in the closet of his bedroom in the Gillen house. After his death an examination of this trunk was made by his brother and others, and there was discovered therein a certificate of deposit for about $1,700 and something like $600 in cash. This property afterwards came into the possession of the complainant administrator, and, according to the inventory filed in the probate court, amounted to $2,797.98; this sum being exclusive of

the $1,600 note and mortgage in question. The decree of the court below dismissed complainant's bill and confirmed the title to said note and mortgage in defendant and cross-complainant, Ella Gillen, according to the prayer of her cross-bill. From this decree, complainant appeals.

In his principal brief complainant raises but one question, which is stated in the following language:

"In the present case, assuming that a manual delivery of the papers was actually made, it is admitted that no assignment was ever made of the mortgage and no indorsement upon the note. Therefore the element of the delivery of the legal title is absent. Also, under the evidence in this case, the donor might have revoked the gift at any time before his death; and further, as a matter of record and without the intervention of a decree of a court, it was not a gift executed, but required the contingency of a decree to give it even semblance of a legal transfer."

We are satisfied that the position of the complainant upon this point is untenable. There is no doubt that a valid gift of a chose in action may be made *inter vivos* without writing. In the case of *Kimball* v. *Green,* 148 Mich. 298 (111 N. W. 761), cited and relied upon by complainant, the evidence was examined and held to be insufficient to establish the gift, but the opinion does not hint that a written assignment of the mortgage or indorsement of the note in writing was necessary.

In *Shepard* v. *Shepard,* 164 Mich. 183 (129 N. W. 201), Mr. Justice Stone, speaking for the court, says:

"All that is necessary to constitute a valid transfer of property by parol is an expression to that effect by the donor, accompanied by a delivery of the thing to the donee."

See, also, *Grover* v. *Grover,* 24 Pick. (Mass.) 261 (35 Am. Dec. 319); *Hackney* v. *Vrooman,* 62 Barb. (N. Y.) 650; *Watson* v. *Watson,* 69 Vt. 243 (39 Atl.

201) ; *Travelers' Ins. Co.* v. *Grant,* 54 N. J. Eq. 208
(33 Atl. 1060) ; *Rinard* v. *Lasley,* 143 Ill. App. 450;
*Brown* v. *Crafts,* 98 Me. 40 (56 Atl. 213) ; *Common-wealth* v. *Crompton,* 137 Pa. 138 (20 Atl. 417). Many
other authorities to the same effect could readily be
cited.

In his supplemental brief complainant raises for
the first time the question that, as a matter of law, the
evidence fails to establish a gift. That evidence we
have already quoted. The rule as laid down in Cyc.
is as follows:

"To constitute a valid gift *inter vivos,* the purpose
of the donor to make the gift must be clearly and
satisfactorily established, and the gift must be com-
plete by actual, constructive, or symbolic delivery,
without power of revocation." 20 Cyc. p. 1193.

The question to be determined, then, is whether
the evidence of the gift is such as to warrant the de-
cree made.

In the case of *Kimball* v. *Green, supra,* an examina-
tion of the record in this court discloses the fact that
the evidence of the gift was much stronger than it is
in the case at bar. There were, however, other cir-
cumstances in that case which tended to throw doubt
upon the credibility of that testimony, chief among
which was the fact that the person claiming the gift
herself made application for the appointment of an
administrator for the estate of the donor, in which
she stated that the donor was at the time of his death
possessed of personal property to the amount of $500
and upwards, and it appeared that, exclusive of the
property claimed as a gift, the donor died possessed
of less than $50. The decree of the court below in
that case did not sustain the gift, and that decree was
affirmed in this court. In the instant case the evi-
dence of Ruth Gillen, inexact as it is, stands undis-
puted by any other testimony in the case or any fact

or circumstance which would tend to cast doubt upon its credibility. The history of complainant's decedent likewise lends color to the verity of her testimony. The learned chancellor who heard her testimony evidently gave it full credence, and with him we are disposed to agree.

The decree is affirmed.

BIRD, MOORE, and STEERE, JJ., concurred with BROOKE, J.

KUHN, J. I am unable to agree with the conclusions reached by Mr. Justice BROOKE in this case. A careful examination of the testimony of Ruth Gillen, the only witness sworn as to the gift, leads me to the conclusion that under the authority of *Kimball* v. *Green*, 148 Mich. 298 (111 N. W. 761), it is insufficient to establish a gift *inter vivos*. Assuming that she testified absolutely truthfully, there is yet a lack of certainty in her evidence, which, in my opinion, is fatal. Nowhere in her testimony does she identify the mortgage and note in question with the papers delivered by complainant's intestate to her mother, and nowhere does she say that said intestate used language which necessarily imported a gift. In one place in her testimony she states the language of said decedent to have been: "Take these; I want you to have them." In another place she says, in answer to the court: "I don't remember the exact words, but he brought them out and told her he wanted her to have them now, and said something about their not being on record." In my opinion, neither statement necessarily implies a gift from complainant's decedent to Ella Gillen. While the circumstances surrounding the case are such as to perhaps indicate the truthfulness of Ella Gillen's claim, it should be remembered that the complainant's decedent kept the papers in question and all his other valuables in an unlocked trunk in his room, to which any member of the family

had ready access. It is unnecessary to impute dishonest motives to Ella Gillen or her daughter in this case, but I am of opinion that to hold a gift *inter vivos* was made out by the very meager, unsatisfactory, and inconclusive testimony of the single witness Ruth Gillen under the circumstances of this case would be to set a precedent extremely dangerous.

I think the decree of the court below should be reversed, and a decree entered in this court granting the prayer of complainant's bill.

MCALVAY, C. J., and STONE and OSTRANDER, JJ., concurred with KUHN, J.