WILLIAM R. TRACY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

HELEN GREGORY TRACY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 45513, 45514.   Promulgated April 5, 1932.

*Edward S. Reid, Jr., Esq.,* for the petitioners.
*Bruce A. Low, Esq.,* for the respondent.

OPINION.

McMahon: In their brief the petitioners abandoned the assignment of error regarding the loss on the sale of a temporary residence at Pontiac, Michigan, and the respondent's determination in that regard will not be disturbed.

The remaining issues, in so far as they relate to petitioner Helen Gregory Tracy, apply only to the year 1926, but petitioner William R. Tracy raises issues as to both the years 1925 and 1926.

The first question to be determined is whether the respondent erred in taxing to petitioner William R. Tracy the full amount of the gains and dividends from the stocks in the marginal stock-trading account with Otis & Company, and in holding that all the interest paid to Otis & Company for carrying the account should be deducted by him, instead of holding that such income and deductions should be divided equally between the two petitioners. No question is raised by the petitioners as to the correctness of the amounts determined by the respondent as representing such gains, dividends and interest. The respondent has held that the account was owned by petitioner William R. Tracy. Petitioner contends that the account was owned by the two petitioners as joint tenants and that each is entitled to return one-half of the gain and dividends and to deduct one-half of the interest in computing their net income. It is the position of the petitioners that Tracy in 1924 made a gift to his wife of a one-half interest in the account in question.

In *Lee* v. *Lee*, 5 Fed. (2d) 767, the court quotes with approval the following from *Allen-West Commission Co.* v. *Grumbles*, 129 Fed. 287:

Among the indispensable conditions of a valid gift are the intention of the donor to absolutely and irrevocably divest himself of the title, dominion, and control of the subject of the gift in praesenti at the very time he undertakes

to make the gift; * * * the irrevocable transfer of the present title, dominion, and control of the thing given to the donee, so that the donor can exercise no further act of dominion or control over it; * * *

In *Bowen* v. *Kutzner*, 167 Fed. 281, 296, it is stated:

Gifts inter vivos of personal property, to be effective, must be accompanied by the delivery of the possession, the donor parting with all present and future dominion over it; * * *

In *Hoyt* v. *Gillen*, 181 Mich. 509, 148 N. W. 163, it is stated:

The rule as laid down in Cyc. is as follows: "To constitute a valid gift inter vivos the purpose of the donor to make the gift must be clearly and satisfactorily established, and the gift must be completed by actual, constructive, or symbolic delivery without power of revocation."

To the same effect is *Shepard* v. *Shepard*, 164 Mich. 183; 129 N. W. 201.

The Board has heretofore held in *Edward H. Mount*, 16 B. T. A. 847, that "a gift, if it is one in fact, is an unqualified giving up of dominion over the property itself and everything appertaining thereto."

Have the petitioners shown that William R. Tracy intended to divest himself of ownership and control over any portion of the account in question and make a gift to Helen Gregory Tracy? We believe not. In his letter of January 1, 1925, to Otis & Company, Tracy stated: "Please make a joint account of *my* transactions," and " Orders for transactions in this account will be given to you for the writer."

It does not appear that he told his wife what was in the letter, except that he told her he had directed the broker to make the account joint, or that she understood that she could draw on the account. There was no explanation offered of the delay in the change in the broker's books.

It does not expressly appear that Mrs. Tracy assumed any liability for losses or otherwise; that she could trade in or draw upon the account or do anything else with the account; or that the directions contained in the letter to the broker could not be revoked by Tracy at any time.

The letter calls for a mere change in name and is limited to his transactions. It does not appear that the reservation contained in the last paragraph of the letter was brought to her attention. We construe this paragraph to mean that she could not on her own account give orders to buy or sell.

It does not appear that Tracy or his wife or the broker had a clear understanding of what took place or was intended to take place. If a gift was intended, there should have been no equivocation about it. The intention to make a gift should have been shown clearly. The limitations of the letter negative the theory of a gift.

See *Garner* v. *Bemis*, 81 Fla. 60; 87 So. 426, where the Supreme Court of Florida stated:

[3] In the case of an alleged gift from husband to wife, there must be clear and convincing evidence of a delivery of the property by the husband with the intention of divesting himself of all dominion and control of it and of vesting it in the wife, and the evidence of the circumstances of a gift of an unindorsed chose in action should be full, clear, and convincing. * * *

We hold that the petitioners have not met the burden of showing that the respondent erred in holding that this account in the years in question belonged to William R. Tracy alone, that the income therefrom is taxable to him in its entirety, and that the interest paid to Otis & Company for carrying the account is deductible by him alone. The respondent's determination in these regards is approved.

The testimony of the witness Savage deals with joint trading accounts created by express written agreements, formally entered into, in Detroit, subsequent to 1925–1926, the period in question, and as these are quite different from the one before us in this proceeding, his testimony is of no assistance.

Each of the petitioners alleges that the respondent erred in holding that property taxes on real estate in Michigan owned by them as tenants by the entireties are deductible by William R. Tracy alone. The evidence discloses that the respondent increased the deduction claimed in 1925 by William R. Tracy, on account of taxes paid, by the amount of $284.09, representing one-half of the taxes paid on real estate located in Michigan which the two petitioners owned jointly. The evidence discloses that for the year 1926 the respondent disallowed a deduction of an amount of $612.33 claimed by Helen Gregory Tracy and allowed it as an additional deduction in computing the tax liability for William R. Tracy for the year 1926. These taxes, according to the deficiency letter, represent "taxes on local property, South Haven property, and property in Cleveland."

Petitioners contend that under the revenue acts the owners of property are the proper parties to deduct taxes, that each of the petitioners owned an equal interest in the property, and that the taxes should be deductible by each in equal proportions.

There is no evidence that Helen Gregory Tracy paid any part of them, or that William R. Tracy did not pay the full amount thereof. In this situation there is no basis in fact for disturbing the respondent's determination as to the deductibility of these taxes. On the contrary there is a presumption here that his determination is correct. Upon the record we must hold that the respondent did not err in this respect.

It is alleged by the petitioner William R. Tracy that the respondent erred in holding that rents from real estate in Florida

owned by him and Helen Gregory Tracy as tenants by the entirety were income of William R. Tracy alone, rather than income to each of them equally. The evidence discloses that the respondent increased William R. Tracy's reported net income for the year 1925 by the amount of $323.65, representing one-half of the rent from real property located in Florida. However, the respondent has not held, and the evidence does not show, that this property was owned by the two petitioners as tenants by the entirety. It simply shows that such property was owned by them " jointly." In this situation there is a presumption that each petitioner owned a one-half interest therein, since there is no evidence to the contrary. *Loring* v. *Palmer*, 118 U. S. 321; *Nippel* v. *Hammond*, 4 Colo. 211; *Shiels* v. *Stark*, 14 Ga. 429; *Greenwood* v. *Bennett*, 208 Ala. 680; 95 So. 159; *In re Sutter's Estate*, 245 N. Y. S. 636, and cases cited; *Kissam* v. *McElligott*, 280 Fed. 212; Thompson on Real Property, section 1768, 1771; 33 C. J. 837, 909.

The determination of the question of who is properly taxable upon the income from the property depends upon the rights of each to the ownership and possession of such income. As to such rights we are bound by law of Florida. *Warburton* v. *White*, 176 U. S. 484; *Bucher* v. *Cheshire R. Co.*, 125 U. S. 555; and *Kuhn* v. *Fairmont Coal Co.*, 215 U. S. 249; *E. K. Wood Lumber Co.*, 25 B. T. A. 1013.

Respondent cites section 5867 of the Compiled General Laws of Florida, 1927, which is to the same effect as section 3948 of the Revised General Statutes of Florida, 1920, which applied in the years in question in this proceeding. That statute provides as follows:

The property of the wife shall remain in care and management of the husband, but he shall not charge for his care and management, nor shall the wife be entitled to sue her husband for the rent, hire, issues, proceeds, or profits of her said property.

However, in *Florida Citrus Exchange* v. *Grisham*, 65 Fla. 46; 61 So. 123, the Supreme Court of Florida had the following to say with regard to a similar provision of the General Statutes of Florida of a prior year:

[1] Under the act of March 6, 1845, brought forward in the General Statutes as section 2589, " the property of the wife shall remain in care and management of the husband, but he shall not charge for his care and management, nor shall the wife be entitled to sue her husband, for the rent, hire, issues, proceeds or profits of her said property." The contention of the plaintiff in error might be sound, were it not for the provision of the Constitution of 1885, art. 11, § 1, declaring that " all property, real and personal, of a wife owned by her before marriage, or lawfully acquired afterwards by gift, devise, bequest, descent, or purchase, shall be her separate property, and the same shall not be liable for the debts of her husband without her consent given by some instrument in writing, executed according to the law respecting conveyances by married women."

The Constitution has thus vested her with the *property* in her separate estate, instead of the mere *title* thereto, which only she enjoyed prior to the Constitution of 1868, of which our present Constitution is an amendment. May the Legislature, against the will of the wife, say to her that the husband shall have absolute dominion over her "property"? To so hold, it seems to us, would cut down the larger word "property" to the narrow word "title," and say to the makers of the Constitution: "You were ignorant of the meanings of the two words; the change you made was a thoughtless one, and we shall again enthrall the wife, however skillful and competent she may be in matters financial, under the yoke of the husband, however incompetent in such matters, or controlled by his appetite for strong drink or gambling, or other dissipations."

[3] The limit the Legislature can go in this direction is to make the husband the agent of the wife as to her separate property, confirmed in her by the organic law, only so long as it may be mutually agreeable, the husband serving without compensation; but the Legislature may not interfere with her dominion over that property, created and fixed in her by the higher law, to the extent of placing it irrevocably in the control of her husband.

   *       *       *       *       *       *       *

It is, however, asserted that the question is no longer open in this State. Assuming that the court may estop itself from obeying the mandate of the Constitution we shall proceed to examine our previous holdings. In *Marye* v. *Root*, 27 Fla. 453, 8 South. 636, the precise point decided was that the income from the wife's property would not be subjected or sequestrated for the husband's debts, under the Constitution of 1868. Following up this decision, we held, in *Shomaker* v. *Waters*, 59 Fla. 414, 52 South. 586, that the husband alone could not mortgage the crops grown upon her separate property. In *Fritz* v. *Fernandez*, 45 Fla. 318, 34 South. 315, and *Graham* v. *Tucker*, 56 Fla. 307, 47 South. 563, 19 L. R. A. (N. S.) 531, 131 Am. St. Rep. 124, we recognized some life in the statute to the extent only of holding that, the wife consenting actively or silently, the husband might be her responsible agent in the management and control of her property. There may be expressions in some of these opinions looking to a larger scope to the statute; but such expressions are not necessary to the decisions, and are not binding.

It would be too severe a load upon an absolute separate property in an estate to compel the owner to go into the courts in order to be relieved of a statutory burden placed thereon; but we do not see that it is necessarily beyond the power of the Legislature, in recognition of the traditional headship of the family, to declare that the husband shall remain in the care and management of the wife's separate estate, without compensation, so long as that arrangement is agreeable, to both parties.

   *       *       *       *       *       *       *

See also *Shomaker* v. *Waters*, 59 Fla. 414; 52 So. 586, wherein it is said: "It seems, therefore, to be settled that the rents and profits of a wife's separate statutory property are her property."

We hold that each petitioner herein was entitled to one-half of the rent from the Florida real estate in question and that the petitioner William R. Tracy is taxable upon only one-half of the rent

received from such property in the year 1925. See *F. J. Carman*, 25 B. T. A. 162. From the above cited Florida decisions we are of the opinion that if William R. Tracy collected the one-half of the rents from the property in question to which his wife was entitled, he did so merely as her agent. Receipt of rent by an agent is receipt by the principal. *George L. Craig et al.*, 7 B. T. A. 504.

It is also alleged that the respondent erred in holding that petitioner William R. Tracy realized income in 1926 in the amount of $889.68 from the Mair Trust.

In the petition it is alleged:

The so-called Mair Trust was organized in 1926, and was a trust to buy and sell lands in Oakland County, Michigan, wherein petitioner and other persons were beneficiaries. This trust was determined by the Department of Internal Revenue, to be an association, taxable as a corporation, and petitioner, the trustee, and the other beneficiaries acquiesced in such determination. The Mair Trust made no distribution of income in 1926. The income of the Mair Trust has been assessed to the Mair Trust as an association.

In his answer the respondent admitted all the above allegations in the petition, except that he denied that the Mair Trust made no distribution of income in 1926.

At the hearing petitioner William R. Tracy unqualifiedly testified, and such testimony was not controverted, that he received no distribution whatsoever from the Mair Trust in either of the years 1925 or 1926.

The respondent contends that since the petitioner William R. Tracy did not produce any books to prove that the amount in question was not paid to him, there is a presumption that if the available documents and records had been produced they would have been injurious to the petitioner. However, we are not advised that there were any documents or books which would bear upon this question, and, even if there were, it is our opinion that they would not be better evidence of amounts received by petitioner than petitioner's own testimony under oath. Such evidence, if produced, · might have been cumulative merely. See *Fulsom-Morris Coal & Mining Co.* v. *Mitchell*, 37 Okl. 575; 132 Pac. 1103, cited in respondent's brief.

The case of *Missouri K & T Ry. Co.* v. *Elliott*, 102 Fed. 96, also cited by respondent is not in point. There, the defendant, having certain records in its possession and refusing to produce them after due notice, it was held that the plaintiffs had a right to introduce secondary evidence of their contents, and that in such situation there is a presumption that the secondary evidence is correct, and that the primary evidence if offered by the party refusing to offer it although in a position to do so, would be prejudicial to such party.

We hold that the respondent erred in including the amount of $889.68 in William R. Tracy's income for the year 1926.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

LANSDON and MATTHEWS concur in the result.

MURDOCK and LEECH dissent.