ALAMPI *v.* FRYE.

1. APPEAL AND ERROR—REVIEW DE NOVO—TRANSFER OF STOCK.
   On appeal from order dismissing bill to establish ownership of certificates of stock and to compel transfer on books of corporation issuing them, Supreme Court considers the case anew upon the evidence taken in the circuit court.

2. GIFTS—INTER VIVOS—EVIDENCE—CERTIFICATES OF STOCK.

> Gift *inter vivos* of certificates of stock, alleged to have been
> made to plaintiff nearly seven years prior to death of his
> uncle, the record owner, during which time such owner received
> substantial dividends, *held,* not established by evidence intro-
> duced by nephew.

BOYLES, C. J., and SHARPE, J., dissenting.

Appeal from Wayne; Jayne (Ira W.), J. Sub-
mitted June 11, 1943. (Docket No. 76, Calendar
No. 42,379.) Decided October 11, 1943.

Bill by Joseph Alampi against Floyd Frye, ad-
ministrator of the estate of Giovanbattista Alampi,
also known as John Alampi, deceased, and Detroit
Edison Company to determine ownership of stock,
to require the transfer of stock on books of the
corporation, and for an accounting. Decree for
defendants. Plaintiff appeals. Affirmed.

*Frank M. Kopietz (Richard A. MacRae,* of coun-
sel), for plaintiff.

*Anthony Maiullo,* for defendant administrator.

WIEST, J. September 27, 1933, John Alampi, a
long-time employee of the Detroit Edison Com-
pany, purchased 20 shares of the par value of $100
each of the capital stock of that company, and re-
ceived a certificate to that effect. On December 29,
1933, he purchased 15 more shares of the stock of
the company and received another certificate to
such effect. Joseph Alampi, nephew of John, filed
the bill herein claiming that he is the owner of the
certificates by gift *inter vivos* from his uncle. In
his bill plaintiff claims that after his uncle's death,
which occurred on October 5, 1940, he ran across

the certificates in his personal effects and for the first time noticed that the certificates did not bear the indorsement of John Alampi, and seeks decree therein holding him to be the owner and requiring defendant, the Detroit Edison Company, to transfer the certificates to his name on the books and records of the company. Defendant Floyd Frye, administrator of the estate of John Alampi, deceased, claims the certificates were the personal property of John Alampi and constitute a part of his estate.

The issues were tried by the court, a finding made and decree entered to the effect that plaintiff had not established ownership of the certificates by gift *inter vivos* and the bill was dismissed. Plaintiff reviews by appeal, and we consider the case anew upon the evidence taken in the circuit court.

Plaintiff was also employed by the Detroit Edison Company as a workman, and he offered testimony that while he was engaged in work in an excavation his uncle appeared and called him to the surface and there handed him an envelope, stating in Italian, "Take this and save it well," and also said there were shares in it (the envelope). Another witness in behalf of plaintiff testified: "He (John Alampi) walked around the hole and called Joe to come up, and he gave him an envelope for the stock. He said: 'Joe, that is for you.' He said: 'It is some stock I am giving you.' " This occurred, it is claimed, in the month of February, 1934.

Up to the time of his death John Alampi received the dividends on the stock paid by the company and amounting to quite a sum.

Plaintiff in his bill also claims that his uncle sought his advice as to what to do with funds he was to receive from a closed bank and plaintiff sug-

gested that he invest some of the surplus money in the stock of the Detroit Edison Company.

It would seem that if the certificates were given to plaintiff by his uncle that it was rather an off-hand way of giving $3,500, the value of the stock, and that plaintiff would have been sufficiently interested in the gift to have looked at the stock sometime previous to his uncle's death, quite seven years later, and have sought the dividends. John Alampi did not live with plaintiff but had a room elsewhere and, inasmuch as he purchased the shares of stock at the suggestion of plaintiff who had a home, he may have handed the envelope to plaintiff for safekeeping. Such was the thought of the trial judge and, under all the circumstances, we cannot avoid entertaining the same thought and this bars an affirmative finding of a gift *inter vivos*. The record has been read with care and we can readily discern why the circuit judge, who saw and questioned the witnesses, could not find a gift *inter vivos,* as claimed by plaintiff.

The niece of John Alampi testified that she was at the home of her mother, where Mr. Alampi lived for many years, and one morning he went out to get his hair cut and when he came back about 10 o'clock he complained of a pain in his stomach and said to the witness, "don't you forget to go over and get my stock," and about five minutes later he died.

We think the circuit judge reached the right conclusion and the decree in the court below is affirmed, with costs against plaintiff.

CHANDLER, NORTH, STARR, BUTZEL, and BUSHNELL, JJ., concurred with WIEST, J.

BOYLES, C. J. (*dissenting*). I think that the proofs were sufficient to establish a gift *inter vivos*.

The stock certificates were in plaintiff's possession for approximately seven years, and still are, after the death of John Alampi. When John Alampi gave the stock certificates to plaintiff, he said, in the presence of two witnesses:

"Here Joe, this is Detroit Edison stock."

He further said:

"Joe that is for you. It is some stock I am giving you.  *  *  *  This I give to you and keep for yourself."

Another eyewitness to the same transaction when John Alampi handed to plaintiff the envelope containing stock testified:

"These are for you."   "Take this and save it well."

These men were fellow employees of the Edison Company and old acquaintances of John Alampi. This testimony affords no basis for the assumption that John Alampi said in effect "Keep this for me." Nor have we the right to assume that Joe Alampi did not look at the stock for seven years, merely because he did not discover the absence of a formal assignment. These men had been working together for the Detroit Edison Company for many years. Joe had a family of whom John was very fond and whom he frequently visited. John had no home of his own, lived upstairs in the home of a brother and his family for about 20 years and died there. The circumstances are consistent with the theory that John Alampi intended that his close companion and financial adviser, his nephew Joseph, should have the stock. The only testimony to the contrary was given by a niece who was a party in interest, who might ultimately profit if Joe was not held to be the owner of the stock. She testified that five minutes

before John Alampi died he told her "don't you forget to go over and get my stock." Where there is no suggestion of fraud or undue influence, very slight evidence is sufficient to establish delivery of a gift *inter vivos. Love* v. *Francis,* 63 Mich. 181 (6 Am. St. Rep. 290). All of the essential elements to establish a gift *inter vivos* are here. A written assignment of the stock was not necessary to effectuate a valid gift. Retaining and receiving the dividends did not invalidate the gift. The instant case comes within the decisions of this court in *Hoyt* v. *Gillen,* 181 Mich. 509 (Ann. Cas. 1916 C, 812), and *Cook* v. *Fraser,* 298 Mich. 374, and the cases therein cited.

The case should be reversed for entry of decree for plaintiff, with costs.

SHARPE, J., concurred with BOYLES, C. J.